# EXHIBIT A

ENDORSED
FILED
SAN FRANCISCO COUNTY
SUPERIOR COURT

2007 AUG -6 PM 2: 41

GORDON PARK - LI, CLERK
Deborah Steppe
BY:_____
DEPUTY CLERK

SUMMONS ISSUED

1  Burke J. Hansen (State Bar No. 236030)
   The Law Offices of Burke Hansen
2  819 Eddy St.
   San Francisco, CA 94109
3  Telephone: (415) 771-6174
   Facsimile: (415) 474-3748  CASE MANAGEMENT CONFERENCE SET
4
5  Attorney for Plaintiff:        JAN 2 5 2008 - 9⁰⁰ AM
   Tami Greenwald
6                                  DEPARTMENT 212
7
8        IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
              IN AND FOR THE COUNTY OF SAN FRANCISCO
9
10   TAMI GREENWALD,              )   Case No.: CGC-07-465862
                                  )
11        Plaintiff,             )
                                  )
12      vs.                      )
                                  )   COMPLAINT FOR DAMAGES AND
13                                )   INJUNCTIVE RELIEF,
                                  )   (AND JURY DEMAND)
14   THE BOHEMIAN CLUB, INC.,    )
     ALBERT BOWEN, RICHARD       )
15   BRANDENBURG, DAN CAMPBELL,  )
     and DOES 1 THROUGH 99,      )
16   inclusive,                  )
                                  )
17        Defendants.            )
                                  )
18                                )
                                  )
19   _____)
20
21  Plaintiff complains and alleges as follows:
22                        PARTIES
23      1.  At all material times, plaintiff Tami Greenwald was a
24  resident of the City and County of San Francisco, California.
25  The employment contract on which she sues herein was made in and
26  to be performed in the State of California.  At all material
27
28                            1

1  times, plaintiff worked for THE BOHEMIAN CLUB, INC., [hereafter

2  "Bohemian Club"], an all-male social club located in the City and

3  County of San Francisco, California.

4      2.  Plaintiff is informed and believes that defendant

5  Bohemian Club is a California corporation with its principal

6  place of business in the City and County of San Francisco,

7  California.

8      3.  Plaintiff is informed and believes that defendant Albert

9  Bowen [hereafter "Bowen"] is a resident of the City and County of

10  San Francisco, California.  At all material times, defendant

11  Bowen was plaintiff's supervisor and was acting at least in part

12  within the course and scope of his employment with the Bohemian

13  Club.

14      4.  Plaintiff is informed and believes that defendant

15  Richard Brandenburg [hereafter "Brandenburg"] is a resident of

16  the City and County of San Francisco, California.  At all

17  material times, defendant Brandenburg was plaintiff's supervisor

18  and was acting at least in part within the course and scope of

19  his employment with the Bohemian Club.

20      5.  Plaintiff is informed and believes that defendant Dan

21  Campbell [hereafter "Campbell"] is a resident of the City and

22  County of San Francisco, California.  At all material times,

23  defendant Campbell was plaintiff's supervisor and was acting at

24  least in part within the course and scope of his employment with

25  the Bohemian Club.

26      6.  The true names and capacities of the defendants named

27

28                              2

1  herein as Does 1 through 99, inclusive, whether individual,

2  corporate, associate or otherwise, are unknown to

3  plaintiff who therefore sues such defendants by fictitious names

4  under California Code of Civil Procedure §474.  Plaintiff is

5  informed and believes that Doe defendants are California

6  residents.  Plaintiff will amend this Complaint to show such true

7  names and capacities when they have been determined.  Each

8  defendant was an agent of the other defendants and ratified the

9  conduct of the other defendants.

10                    FACTUAL BACKGROUND

11      7.  On or about March 3, 2003, plaintiff began full-time

12  employment at the Bohemian Club as a line cook.  Plaintiff had

13  been recruited by Albert Bowen, (hereafter "Bowen"), the Director

14  of Human Resources, to relocate from Phoenix, Arizona, to San

15  Francisco, California, to work at the Bohemian Club in San

16  Francisco, as well as the Bohemian Grove in Monte Rio,

17  California.

18      8.  As part of the recruitment effort by Bowen, plaintiff

19  was promised by Bowen, in the course and scope of his employment

20  as Director of Human Resources for the Bohemian Club, relocation

21  pay to cover the cost of her moving expenses, as well as the cost

22  of buying out her new lease in the Phoenix area.  In justifiable

23  reliance thereon, plaintiff relocated to San Francisco.

24      9.  After plaintiff arrived in San Francisco, and when

25  plaintiff asked for the relocation expenses, Bowen claimed that

26  the General Manager of the club, Matthew Oreggero, (hereafter

27

28                              3

1   "Oreggero"), had changed his mind about the relocation
2   compensation, but that plaintiff would be allowed to stay on Mr.
3   Bowen's couch until she saved enough money to get an apartment of
4   her own.  Plaintiff did not know anyone with whom she could
5   reside in San Francisco, and no longer had a lease in Phoenix.
6   As a direct and proximate result of defendants' bad faith, and
7   failure to reimburse approximately $5,000 in relocation expenses,
8   plaintiff had no reasonable alternative but to accept said offer
9   and sleep on Bowen's couch until she could save enough money to
10  rent a domicile of her own.
11      10.  During her stay on Bowen's couch, and in the course and
12  scope of his employment as Director of Human Resources, Bowen
13  repeatedly told plaintiff not to tell any coworkers that she was
14  staying on Bowen's couch, while Bowen himself told several staff
15  members, including General Manager Oreggero, about the living
16  arrangement, willfully and falsely implying in so doing that
17  plaintiff and Bowen might be engaged in a sexual relationship,
18  thereby creating a hostile and harassing work environment for the
19  plaintiff.  Plaintiff reasonably believed that she might be
20  terminated if she disobeyed a direct order from Bowen in his
21  capacity as Director of Human Resources.  When other employees at
22  work asked whether or not he was engaged in sexual relations with
23  the plaintiff, and in the course and scope of his employment,
24  Bowen failed to deny that sexual relations were taking place,
25  willfully and by omission reinforcing the untrue insinuation that
26  he and plaintiff were engaged in sexual relations, thereby
27
28                                  4

1 creating an oppressive and hostile work environment for the
2 plaintiff.

3    11.  Also during her stay on Bowen's couch, which was
4 directly and proximately caused by defendant's bad faith refusal
5 in the course and scope of his employment as Director of Human
6 Resources to reimburse plaintiff's relocation expenses as
7 previously agreed, an agreement upon which the plaintiff
8 reasonably and justifiably relied while incurring approximately
9 $5,000 in relocation expenses, Bowen habitually would engage in
10 intercourse with another Bohemian Club employee, Karen McDonald
11 (hereafter "McDonald") in the next room, and then talk about the
12 incident to plaintiff in graphic detail, such as telling
13 plaintiff that he loved performing oral sex on McDonald while she
14 was menstruating.  Bowen also asked plaintiff if she ever allowed
15 men to perform oral sex on her when she was menstruating, thereby
16 creating a hostile and oppressive environment between plaintiff
17 and McDonald, as well as between plaintiff and defendant in the
18 course and scope of his employment and his capacity as Director
19 of Human Resources.

20    12.  In the course and scope of his employment, Bowen
21 repeatedly made sexual advances at the plaintiff, and plaintiff,
22 who was at the mercy of Bowen due to his bad faith refusal in the
23 course and scope of his employment and in his capacity as
24 Director of Human Resources to reimburse plaintiff $5,000 in
25 moving expenses, as previously agreed, repeatedly rebuffed
26 Bowen's advances, frequently pretending to be asleep when he got
27
28                                5

1  home from work.  On June 23rd, 2003, Bowen came home intoxicated
2  and asked plaintiff to touch his genitals in a sexual manner, and
3  plaintiff replied "no, leave me alone."  At that point in time,
4  plaintiff still had not saved enough money to live on her own,
5  had not received any of reimbursement for her moving expenses,
6  and had no reasonable alternative to living on Bowen's couch,
7  sometimes even sleeping outside in her car.
8      13.  In August of 2003, Bowen asked plaintiff if she would
9  allow him to watch her take a shower, and plaintiff replied "No,
10 you're my boss."  In fact, a few days after that, Bowen did,
11 intentionally and with malice, walk in on plaintiff while she was
12 in the shower, and plaintiff, due to the oppressive and harassing
13 nature of the Bowen's conduct in the course and scope of his
14 employment as Director of Human Resources, and the mental anguish
15 his conduct caused her, moved out of the apartment a few days
16 later.  Not long after that, defendant, at work and in the course
17 and scope of his employment, remarked to plaintiff that plaintiff
18 had "a nice body, and it looked great through the shower curtain,
19 like an hourglass figure."  He also said to plaintiff that he
20 "didn't realize you had such nice boobs."
21     14.  Between February 17th and 26th, 2004, soon after
22 plaintiff had undergone ovarian surgery, and in the course and
23 scope of his employment as plaintiff's supervisor, defendant
24 Campbell snidely, condescendingly and repeatedly asked plaintiff
25 "how her ovaries were doing," such that plaintiff suffered great
26 emotional distress.  Defendant Campbell also asked plaintiff, in
27
28                                    6

1  front of coworkers, when she mentioned that she needed to use the
2  restroom whether she was going to urinate or defecate.  Plaintiff
3  was grossly offended such that she suffered great emotional
4  distress.  Defendant Campbell is known around the Club for making
5  such inappropriate remarks, and defendant's inappropriate
6  behavior created a hostile and oppressive work environment.
7      15.  In June 2004, at a Bohemian Club event known as "Spring
8  Jinks," Bowen, at the event and in the course and scope of his
9  employment as Director of Human Resources, repeatedly made lewd
10  and sexual remarks to plaintiff about the young servers he had
11  hired for the event, thereby creating a hostile and harassing
12  work environment and directly and proximately causing plaintiff
13  great mental anguish.  Bowen made comments such as "did you see
14  the size of their tits, damn I hire some hot girls, that's why I
15  have this job," and "the things I could do to them.  The members
16  love me because of the girls I hire." Plaintiff complained to
17  Bowen about the remarks, and Bowen, in the course and scope of
18  his employment and in his capacity as Director of Human
19  Resources, replied "I am protected here and Matt Oreggero loves
20  me and would never fire me."
21      16.  On July 15, 2004 plaintiff suffered a back injury in
22  the course and scope of her employment that put plaintiff on
23  modified duty such that she was not to lift more than 10 pounds
24  on the job.  Notwithstanding such restriction, defendant
25  Brandenburg, in the course and scope of his employment as
26  plaintiff's supervisor, would routinely require plaintiff to lift
27
28                                    7

1  more than 10 pounds in the course and scope of her employment,

2  thereby willfully, unlawfully, and with malice refusing to

3  provide plaintiff with a reasonable accommodation for her

4  disability. Plaintiff has suffered both physical and mental

5  anguish as a direct and proximate result of said refusal to

6  provide reasonable accommodation.

7      17.  On July 24th, 2004, plaintiff witnessed Bowen, in the

8  course and scope of his employment and in his capacity as

9  Director of Human Resources, yelling at McDonald in the Human

10  Resources trailer at the Bohemian Grove, and to plaintiff's great

11  distress witnessed McDonald crying.  McDonald later informed

12  plaintiff that the fight had concerned lewd and sexual remarks

13  that Bowen, in the course and scope of his employment and in his

14  capacity as Director of Human Resources, was making about the

15  female serving staff at the Bohemian Grove.

16      18.  On December 15th, 2004, an employee named Morris told

17  plaintiff that she was uptight and "needed to get laid," and

18  plaintiff, greatly distressed and suffering extreme mental

19  anguish due to her substantial history of harassment at the

20  Bohemian Club, responded by yelling at Morris not to talk to her

21  that way.  Plaintiff complained to Dan Campbell (hereafter

22  "Campbell"), a manager at the club, and repeated what had been

23  said to her to Campbell.  Campbell took plaintiff to Bowen, who,

24  in the course and scope of his employment and in his capacity as

25  Director of Human Resources, told plaintiff to "deal with it.

26  Maybe he's right," thereby tolerating and implicitly endorsing a

27

28                              8

1  hostile and harassing work environment, and directly and
2  proximately causing great mental distress, suffering and anguish
3  for the plaintiff.
4      19. On December 31st, 2004, Bowen, in the course and scope
5  of his employment and in his capacity as Director of Human
6  Resources, described lewdly and in graphic detail the kinds of
7  sexual acts he wanted to perform on the plaintiff, and told
8  plaintiff he wanted to see the "expressions you would make while
9  I'm fucking you." The comment directly and proximately created a
10 hostile and harassing work environment, and directly and
11 proximately caused the plaintiff great mental suffering and
12 anguish, such that plaintiff would hide in a pastry room or a
13 walk-in to avoid contact with Bowen.
14     20.  On February 8th, 2005, Bowen, in the course and scope
15 of his employment and in his capacity as Director of Human
16 Resources, asked plaintiff if she would have sexual intercourse
17 with him on the internet so that others could watch, and offered
18 to give plaintiff most of the money, since he "makes more money
19 than you do," thereby creating a hostile and harassing work
20 environment, and directly and proximately causing great mental
21 distress and anguish on the part of the plaintiff.
22     21.  On May 24th, 2005, Bowen, in the course and scope of
23 his employment and in his capacity as Director of Human
24 Resources, was taking a picture of plaintiff to update
25 plaintiff's employee badge for the upcoming Bohemian Grove event,
26 and, bent over and photographed plaintiff's breasts rather than
27
28                              9

1  her face, and said to plaintiff, "I want to have sex with you.

2  You're so sexy, and you make me hard."  Plaintiff told Bowen to

3  stop photographing her, and left the club, directly and

4  proximately suffering great mental anguish, crying all the way

5  home.

6       22.  On September 8th, 2005, in the course and scope of his

7  employment and in his capacity as Director of Human Resources,

8  Bowen told plaintiff, " I like to eat girls out when they're on

9  their period.  I'm like a vampire."  The remark directly and

10  proximately created a hostile and harassing work environment, and

11  directly and proximately caused plaintiff great mental suffering,

12  distress and anguish.

13       23.  On September 8th, 2005, Bowen, in the course and scope

14  of his employment and in his capacity as Director of Human

15  Resources, asked plaintiff if her "tits were real."  The remark

16  directly and proximately created a hostile and harassing work

17  environment, and directly and proximately resulted in great

18  mental anguish, distress and suffering on the part of the

19  plaintiff.

20       24.  On September 14th, 2005, as plaintiff was leaving work,

21  Bowen, in the course and scope of his employment and in his

22  capacity as Director of Human Resources, stared lewdly at the

23  plaintiff as she was leaving work, directly and proximately

24  creating a hostile and harassing environment, and directly and

25  proximately caused plaintiff great mental suffering, distress and

26  anguish.

27

28                                    10

25.   On September 15th, 2005, plaintiff went to Bowen in his office to discuss her vacation time, and Bowen, in the course and scope of his employment and in his capacity as Director of Human Resources, as plaintiff was leaving Bowen's office, said to plaintiff, "Your ass looked so hot in those jeans you were wearing yesterday, you should wear them more often."  The remark directly and proximately created a harassing and hostile work environment, and directly and proximately resulted in great mental anguish on the part of the plaintiff, who felt disgusted and went home crying once again.

26.   On September 22nd, 2005, Brandenburg verbally abused plaintiff, who at the time was on modified duty due to a previous work place injury, telling plaintiff in front of Sous Chef Kevin Miller, co-worker Jose Luna, and Bowen, "you are a waste of a paycheck.  I don't want you here anyway, if you weren't union I wouldn't schedule you.  If you think it's hard now, just wait, little girl, it will get worse."  The comments created a hostile and harassing work environment based on her disability status, and defamed plaintiff in front of coworkers, damaged plaintiff's reputation in the work place, and caused plaintiff great mental suffering, anguish and distress; and Bowen, in the course and scope of his employment and in his capacity as Director of Human Resources, did nothing to cure the hostile and harassing environment, and by his silence implicitly tolerated and endorsed said hostile and harassing environment.  After this meeting, plaintiff complained to Bowen about what had just happened, and

11

1   the harassing treatment she had received in front of Bowen at the
2   hands of her superior Brandenburg, and Bowen responded and
3   retaliated against plaintiff for complaining about harassment by
4   trying to switch plaintiff to part time duty, which would have
5   had the practical effect of eliminating plaintiff from the work
6   schedule.

7       27. On September 27th, 2005, Brandenburg ordered plaintiff
8   and co-worker Bob Dominguez (hereafter "Dominguez")to ice a tray
9   of fish that weighed approximately fifty pounds, although
10  Brandenburg knew that plaintiff at the time was on modified duty
11  due to a work place back injury that plaintiff suffered July 15
12  of 2004, and not supposed to lift more than ten pounds. As a
13  direct and proximate result of Brandenburg's unlawful refusal to
14  provide reasonable accommodation that day, plaintiff suffered a
15  subsequent back injury, and has suffered both physical and mental
16  anguish as a direct and proximate result of said refusal to
17  provide reasonable accommodation.

18      28. The following day, on September 28th, 2005, plaintiff
19  explained to Brandenburg that she had hurt her back the previous
20  day, and Brandenburg told plaintiff that he did not have "time to
21  deal with it" and to wait for Bowen to arrive. A short while
22  later, Dominguez came up to plaintiff and told her that Bowen
23  wanted to see her.

24      29. When plaintiff went to Brandenburg's office to talk
25  about the back injury suffered the day before, she discovered
26  Brandenburg writing her up for allegedly failing to ice the fish
27
28                              12

1  the previous day.  Plaintiff asked Bowen if Brandenburg had

2  informed Bowen of here most recent injury, and Bowen informed her

3  that Brandenburg had not.  After Brandenburg left the office,

4  defendant Bowen told plaintiff that Brandenburg had said to Bowen

5  that "he would really make sure that if and when she [plaintiff]

6  comes back he will really make sure that she gets hurt by

7  overloading her schedule:"  Bowen unlawfully told plaintiff the

8  she needed to be 100% recovered for her to return to work.  At

9  the time plaintiff, as a direct and proximate result of Bowen and

10  Brandenburg's refusal to provide reasonable accommodation, was in

11  excruciating pain, and she agreed to sign the write up only to be

12  allowed to leave to visit the hospital, suffering both physical

13  and mental anguish as a direct and proximate result thereof.

14      30.  Bowen asked plaintiff to step out of Brandenburg's

15  office, and after plaintiff locked up her knives to go to the

16  hospital, and as plaintiff and Bowen were walking toward the

17  elevator, Bowen asked plaintiff "as long as we've known each

18  other, how come we've never had sex?" thereby, in the course and

19  scope of Bowen's employment and in his capacity as Director of

20  Human Resources, directly and proximately causing plaintiff great

21  mental anguish, suffering and distress, and directly and

22  proximately creating a hostile and harassing work environment.

23      31.  On December 15th, 2004, an employee named Morris told

24  plaintiff that she was uptight and "needed to get laid," and

25  plaintiff, greatly distressed and suffering extreme mental

26  anguish due to her substantial history of harassment at the

27

28                                13

1  Bohemian Club, responded by yelling at Morris not to talk to her

2  that way.  Plaintiff complained to Dan Campbell (hereafter

3  "Campbell"), a manager at the club, and repeated what had been

4  said to her to Campbell.  Campbell took plaintiff to Bowen, who,

5  in the course and scope of his employment and in his capacity as

6  Director of Human Resources, told plaintiff to "deal with it.

7  Maybe he's right," thereby tolerating and implicitly endorsing a

8  hostile and harassing work environment, and directly and

9  proximately causing great mental distress, suffering and anguish

10  for the plaintiff.

11       32.  In or around December of 2006, or January of 2007,

12  plaintiff's nurse case manager Candace Kurt informed Bowen that

13  plaintiff could come back to work with a lifting restriction of

14  20 pounds.  Defendants Brandenburg and Bowen claimed that no

15  reasonable accommodation could be made for plaintiff in her

16  previous position, or in a comparable position, and plaintiff, as

17  a direct and proximate result of that unlawful failure to provide

18  reasonable accommodation, has been unable to return to work at

19  the Bohemian Club, and continues to this day to suffer both

20  professionally and mentally as a direct and proximate thereof.

21  Such refusal to provide reasonable accommodation is retaliatory

22  in nature, and is a direct and proximate result of plaintiff's

23  refusal to engage in sexual relations with the Director of Human

24  Resources, Albert Bowen.  Such persistent and ongoing conduct as

25  constructively terminated plaintiff from her position as cook at

26  the Bohemian Club, and she has suffered professionally,

27

28                                14

1  physically, and emotionally as a direct and proximate result
2  thereof.

3      33.  As a direct and proximate cause of this long, ongoing,
4  and established pattern of abuse, and the ongoing refusal on
5  the part of the individual defendants and the Bohemian Club to
6  provide reasonable accommodation and provide a workplace free of
7  sexual and disability harassment, plaintiff continues to endure
8  great mental distress, suffering and anguish, such that she has
9  been forced, and continues to be forced, to undergo stress-
10  related psychological therapy.  As a direct and proximate result
11  of this retaliatory constructive termination, wherein defendants
12  have, due to plaintiff's continual rejection of repeated sexual
13  advances on the part of the Bohemian Club's director of human
14  resources, Bowen, made it impossible for the plaintiff to return
15  to work under circumstances acceptable to any reasonable woman;
16  and wherein defendants have conspired, and continue to conspire,
17  to refuse to correct the breach of their legal duty to provide a
18  workplace free of harassment and discrimination, and as a direct
19  and proximate cause thereof, plaintiff has suffered great
20  psychological distress and anguish, and has been, and continues
21  to be, unable to pursue her chosen career as a professional chef.
22      34.  Furthermore, the repeated predatory sexual advances by
23  Bowen toward the plaintiff have directly and proximately created
24  a hostile work environment wherein any reasonable woman would
25  fear for her physical safety.  This ongoing and continual failure
26  by Bowen and the Bohemian Club to provide a workplace free of the
27
28                                  15

1  threat of sexual assault by senior management such as Bowen, the

2  director of human resources, has directly and proximately created

3  a hostile and oppressive work environment completely unacceptable

4  to any reasonable woman, to which no reasonable woman could be

5  expected to return, such that plaintiff has been, and continues

6  to be, constructively terminated from her position, and unable to

7  pursue her career as chef.

8      35.  Finally, the refusal by plaintiff's direct supervisor

9  Brandenburg, and subsequently Bowen, to provide reasonable

10  accommodation to plaintiff as cook at the Bohemian Club has

11  directly and proximately made it impossible for plaintiff to

12  return to work, and constructively terminated her therefrom.

13  This ongoing and retaliatory constructive termination has

14  directly and proximately caused, and continues to cause,

15  plaintiff great mental distress and suffering.

16

17                    FIRST CAUSE OF ACTION
                (Sex Discrimination/Sexual Harassment)
18                  (Cal. Government Code §12940)

19      36.  The allegations of paragraphs 1 through 15, 30 through

20  32, and 34 are realleged and incorporated herein by reference.

21  This cause of action is pleaded against defendants Bohemian Club,

22  Bowen, and Campbell.
23
24      37.  Defendants were at all material times employers within

25  the meaning of California Government Code section 12926(d) and,

26  as such barred from discriminating or retaliating in employment

27

28                              16

1  decisions on the basis of sex as set forth in California

2  Government Code section 12940.

3      38.  Plaintiff was at all material times an employee covered

4  by California Government Code section 12940 prohibiting

5  discrimination or retaliation in employment on the basis of sex.

6      39.  Defendants and each of them engaged in a pattern and

7  practice of discrimination against female employees, including

8  plaintiff, on the basis of sex in violation of California

9  Government Code section 12940 by engaging in a course of conduct

10  that included subjecting plaintiff to sexual harassment and

11  hostility because of her sex.  This behavior continued until

12  plaintiff left on disability due to a work place back injury.

13      40.  Further, Doe defendants and each of them, aided and

14  abetted defendants Bohemian Club, Bowen, and Campbell in engaging

15  in illegal discrimination on the basis of sex against female

16  employees, including subjecting plaintiff to sexual harassment

17  and hostility because of her sex, in violation of California

18  Government Code section 12940(i).

19
20
21                         SECOND CAUSE OF ACTION
     (Failure to Maintain Environment Free from Harassment- California
22                    Government Code §12940(j))

23

24      41.  The allegations of paragraphs The allegations of

25  paragraphs 1 through 35 are realleged and incorporated herein by

26

27

28                           17

1  reference.  This cause of action is pleaded against the all

2  defendants.

3      42.  Defendants failed to take all reasonable steps to

4  prevent discrimination and harassment against plaintiff from

5  occurring, and to take immediate and appropriate corrective

6  action to remedy the harassment, in violation of California

7  Government Code section 12940 (j), by engaging in the course of

8  conduct set forth in paragraphs 1 through 35.

9

10     43.  Specifically, the Bohemian Club failed and has failed

11 to the present time to take any disciplinary action against

12 Bowen, Brandenburg, and Campbell, such as issuing a formal

13 warning, providing counseling, or imposing probation, suspension

14 or termination.

15     44.  Plaintiff is informed and believes that defendant

16 Bohemian Club has never had an adequately written policy about

17 sexual harassment, has never adequately conducted any sexual

18 harassment training, and has never adequately posted any sexual

19 harassment policies for its supervisors or employees.

20     WHEREFORE, plaintiff requests relief as hereinafter

21

22 provided.

23                   THIRD CAUSE OF ACTION
24     (Retaliation – California Government Code §12940 (h))

25

26     45.  The allegations of paragraphs 1 through 35 are

27 realleged and incorporated herein by reference.  This cause of

28                            18

1   action is pleaded against Brandenburg, Bowen and the Bohemian

2   Club.

3       46.   Defendants and each of them have retaliated against

4   plaintiff in violation of Government Code section 12940 (h), by

5   engaging in a course of retaliatory conduct, including, among

6   other things, the conduct set forth in paragraphs 1 through 28

7   above, when she complained about sexual harassment and hostility

8   and sex discrimination.  This retaliation by the Bohemian Club,

9   Bowen, and Campbell, acting in the course and scope of their

10  employment, continued until plaintiff left on disability.

11

12      WHEREFOR, plaintiff requests relief as hereinafter provided.

13                  FOURTH CAUSE OF ACTION
14          (Intentional Infliction of Emotional Distress)

15

16      47.   The allegations of paragraphs 1 through 35 are

17  realleged and incorporated herein by reference.  This cause of

18  action is pleaded against all defendants.

19      48.   The conduct set forth hereinabove was extreme and

20  outrageous and an abuse of the authority and position of

21  defendants and each of them.  Said conduct was intended to cause

22  severe emotional distress, or was done in conscious disregard of

23  the probability of causing such distress.  Said conduct exceeded

24  the inherent risks of employment and was not the sort of conduct

25  normally expected to occur in the workplace.  Defendants and each

26  of them abused their position of authority toward the plaintiff,

27

28                              19

1  and engaged in conduct intended to humiliate the plaintiff and to

2  convey the message that she was powerless to defend her rights.

3  Defendant Bohemian Club abused its authority and directly injured

4  plaintiff by its ratification of defendants Bowen, Campbell, and

5  Brandenburg, and by its Department of Human Resources failure to

6  protect the violations of the privacy of the plaintiff.

7     49.   The foregoing conduct did in fact cause plaintiff to

8  suffer extreme emotional distress.  As a proximate result of said

9  conduct, plaintiff suffered embarrassment, anxiety, humiliation,

10  and emotional distress, and will continue to suffer said

11  emotional distress in the future in an amount according to proof.

12

13     WHEREFORE, plaintiff requests relief as hereinafter

14  provided.

15              FIFTH CAUSE OF ACTION
                (Invasion of Privacy)
16

17     50.   The allegations of paragraphs The allegations of

18  paragraphs 1 through 15, 30 through 32, and 34 are realleged and

19  incorporated herein by reference.  This cause of action is

20  pleaded defendants Bowen, Campbell, and the Bohemian Club.

21     51.   Defendant Bowen, without plaintiff's consent,

22  repeatedly intruded into plaintiff's privacy by the conduct set

23  forth above.

24     52.   Defendant Bohemian Club ratified Bowen's conduct

25  invading plaintiff's privacy by communicating private information

26  to other employees about plaintiff who had no need to know the

27

28                              20

1   information.

2       53.  The intrusions described above were offensive and

3   objectionable to plaintiff and to a reasonable person of ordinary

4   sensibilities.  The intrusions were into aspects of plaintiff's

5   life that were private and were entitled to remain private.

6       WHEREFORE, plaintiff requests relief as hereinafter

7   provided.

8                        SIXTH CAUSE OF ACTION

9               (Negligent Infliction of Emotional Distress)

10

11      54.  The allegations of paragraphs 1 through 35 are

12  realleged and incorporated herein by reference.  This cause of

13  action is pleaded against all defendants.

14      55.  In carrying out the above conduct, defendants breached

15  a duty owed to plaintiff to provide a workplace free from unfair

16  treatment, discrimination, and retaliation, and abused their

17  positions of authority toward her.  Said conduct exceeded the

18  inherent risks of employment and was not the sort of conduct

19  normally expected to occur in the workplace.  The Bohemian Club

20  violated said duty directly by ratifying Bowen, Campbell, and

21  Brandenburg's conduct.

22

23      56.  Defendants and each of them knew, or should have known,

24  that said conduct would cause plaintiff extreme emotional

25  distress.  As a proximate result of  defendants' negligent

26  conduct, plaintiff suffered and will continue to suffer extreme

27

28                                21

1  humiliation, embarrassment, mental anguish, and emotional

2  distress in an amount according to proof.

3      WHEREFORE, plaintiff requests relief as hereinafter

4  provided.

5                    SEVENTH CAUSE OF ACTION
6                (Breach of Implied-in-Fact Contract)

7

8      57.   The allegations of paragraphs 1 through 31 are

9  realleged and incorporated herein by reference.  This cause of

10 action is pleaded against the Bohemian Club.

11     58.   During the entire course of plaintiff's employment with

12 the Bohemian club, an employment agreement existed between

13 plaintiff and the Bohemian Club, which included, but was not

14 limited to, the following terms and conditions:

15     (a)   Plaintiff would be able to continue her employment with

16 the Bohemian club indefinitely as long as she carried out her

17 duties in a proper and competent manner;

18     (b)   Plaintiff would not be denied fair treatment or be

19 compelled to resign for other than good cause;

20

21     (c)   The Bohemian Club would not discriminate against

22 plaintiff on the basis of sex or allow her to be sexually

23 harassed or retaliated against.

24     59.   This total employment agreement was evidenced by

25 various written documents, oral representations to plaintiff by

26 the Bohemian Club's agents and employees, and the parties' entire

27

28                              22

1   course of conduct, including the following:

2       (a)   Plaintiff is informed and believes and therefore

3   alleges that portions of this contract are embodied in the

4   Bohemian Club's written personnel policies and discipline

5   procedures;

6       (b)   There is an established policy within the Bohemian Club

7   known to plaintiff and relied on by her, that employees such as

8   plaintiff, who had performed services as a good and faithful

9   employees, would be treated fairly, would not have employment

10  decisions about them without good cause, and would not be

11  subjected to discrimination or retaliation; and

12

13      (c)   Plaintiff's employment history at the Bohemian Club was

14  excellent during the more than two years that she worked there.

15  She received outstanding performance appraisals and was assigned

16  increased responsibilities during her employment.   She received

17  written and oral praise for her hard work, efficiency, and

18  accomplishments at the Bohemian Club.

19

20      60.   As a result of the above representations, plaintiff

21  came reasonably to expect and to rely on the promise of job

22  security and fair treatment.  Such statements and acts by the

23  Bohemian Club communicated to plaintiff the idea that she had

24  performed satisfactorily and that job opportunities would be

25  available. Plaintiff in good faith relied upon these

26  representations and believed them to be true.

27

28                              23

61. Plaintiff's reliance on and belief in and acceptance in good faith of all the assurances, promises and representations listed in paragraph 58, led plaintiff throughout her employment to reasonably believe that her employment was secure and that there existed thereby a contract of continuous employment with the Bohemian Club. As independent consideration for this contract of continuing employment, and as evidence of plaintiff's reliance thereon, in addition to performing her regular duties as an employee of the Bohemian Club, plaintiff gave up and refrained from seeking other employment opportunities.

62. Plaintiff undertook and continued employment and duly performed all conditions of the agreement to be performed by her. Plaintiff has at all times been ready, willing and able to perform and has offered to perform all conditions of this agreement to be performed by her.

63. Despite the representations made to plaintiff and the reliance she placed on them, the Bohemian Club failed to carry out its responsibilities under, and breached the terms of, the employment agreed by, among other things, the following conduct:

(a) By failing to provide plaintiff with a work environment free from harassment, discrimination and retaliation;

(b) By denying plaintiff fair treatment, a promotion, and work opportunities comparable to those of other employees; and

(c) By retaliating and constructively discharging plaintiff

24

1 | when she complained of unfair treatment.

2 |     64.  At all times material hereto, plaintiff performed her

3 | job in a satisfactory and trustworthy manner.

4 |     65.  The Bohemian Club breached the aforementioned total

5 | employment agreement by the conduct set forth above without

6 | regard to or in compliance with the requirements of the aforesaid

7 | agreement, and for reasons that were pretextual and untrue.

8 | Despite complaints to management regarding the harassment or

9 | tolerance thereof by defendants Bowen, Campbell and Brandenburg,

10 | it was never stopped.  In fact plaintiff's unwillingness to

11 | accept the harassment resulted in increased harassment and other

12 | retaliatory behavior.

13 |     WHEREFORE, plaintiff requests relief as hereinafter

14 | provided.

EIGHTH CAUSE OF ACTION
(Breach of the Covenant of Good Faith and Fair Dealing)

    66.  The allegations of paragraphs 1 through 35 are realleged and incorporated herein by reference.  This cause of action is pleaded against the Bohemian Club.

    67.  The aforementioned employment agreement contained an implied covenant of good faith and fair dealing by which the Bohemian Club promised to give full cooperation to plaintiff and her performance under the employment agreement and to refrain

25

1   from doing any act that would prevent or impede plaintiff from

2   performing all the conditions of the agreement to be performed by

3   her or any act that would prevent or impede plaintiff's enjoyment

4   of the fruits thereof.  Specifically, said covenant of good faith

5   and fair dealing required defendants to fairly, honestly, and

6   reasonably perform the terms and conditions of said agreement.

7       68.  The Bohemian Club breached said implied covenant of

8   good faith and fair dealing by denying plaintiff a work

9

10  environment free from harassment, discrimination and retaliation.

11  The Bohemian Club further breached said implied covenant of good

12  faith and fair dealing by denying plaintiff fair treatment.  Such

13  actions were taken at a time when plaintiff was fully capable of

14  and was in fact performing her job in a fully satisfactory

15  manner.  Such actions were not taken because of unsatisfactory

16  job performance by plaintiff; they were taken at least in part

17  because of plaintiff's complaints of harassment and retaliation.

18      69.  Plaintiff is informed and believes that the Bohemian

19  Club breached its contract with plaintiff without conducting any

20  reasonable investigation concerning its obligations under said

21  contract, without good or sufficient cause, for reasons

22  extraneous to the contract, and for the purpose of frustrating

23  plaintiff's enjoyment of the benefits of the contract.

24

25      WHEREFORE, plaintiff requests relief as hereinafter

26  provided.

27

28                              26

## PRAYER FOR RELIEF

WHEREFORE, plaintiff requests relief as follows:

1.  For special and economic damages, including back pay and front pay, for all causes of action.

2.  For general and non-economic damages for all causes of action except the Ninth and Tenth;

3.  For punitive damages according to proof for all causes of action except the Eighth, Ninth and Tenth;

4.  For prejudgment interest at the prevailing legal rate;

5.  For injunctive relief including requiring defendants to adopt reasonable postings and changes in personnel policies and procedures regarding sexual harassment and retaliation, requiring training about sexual harassment for all employees, for a permanent injunction enjoining defendants, their agents, successors, employees, and those acting in concert with them in each unlawful practice, policy, usage, and customer set forth hereinabove, and for such other injunctive relief as the Court may deem proper;

6.  For the costs of the suit, including reasonable attorney fees; and

27

1    7.   For such other and further relief as the Court may deem

2  proper.

3  Date:                          LAW OFFICES OF BURKE HANSEN

By: _____

Burke Hansen

Attorney for Plaintiff

### JURY DEMAND

Plaintiff demands trial by jury in this action.

Date:                          LAW OFFICES OF BURKE HANSEN

By: _____

Burke Hansen

Attorney for Plaintiff

28

1
2
3
4

### VERIFICATION

5
6
7      I, Tami Greenwald, am the plaintiff in the above-entitled
8   action.  I have read the foregoing complaint and know the
9   contents thereof.  The same is true of my own knowledge, except
10  as those matters which are therein alleged on information and
11  belief, and as to those matters, I believe it to be true.
12      I declare under penalty of perjury under the laws of the
13  state of California that the foregoing is true and correct, and
14  that this verification is executed on July ___11___, 2007, at
15  San Francisco , California.
16
17
18                          _Tami Greenwald_
19                          Tami Greenwald
20
21
22
23
24
25
26
27
28                          29