# EXHIBIT B

1  Burke J. Hansen (State Bar No. 236030)
The Law Offices of Burke Hansen
2  819 Eddy St.
San Francisco, CA 94109
3  Telephone: (415) 771-6174
Facsimile: (415) 474-3748
4

5  Attorney for Plaintiff:
Tami Greenwald
6

**ENDORSED**
**F I L E D**
San Francisco County Superior Court

AUG 0 6 2007

GORDON PARK-LI, Clerk
BY_____
Deputy Clerk

7

8          IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
            IN AND FOR THE COUNTY OF SAN FRANCISCO
9

10  TAMI GREENWALD,                    )    Case No.: CGC-07-465862
                                       )
11          Plaintiff,                 )
                                       )
12      vs.                            )
                                       )    AMENDED COMPLAINT FOR DAMAGES
13                                     )    AND INJUNCTIVE RELIEF,
                                       )    (AND JURY DEMAND)
14  THE BOHEMIAN CLUB, INC.,           )
    ALBERT BOWEN, RICHARD              )
15  BRANDENBURG, DAN CAMPBELL,         )
    and DOES 1 THROUGH 99,             )
16  inclusive,                         )
                                       )
17          Defendants.                )
                                       )
18                                     )
                                       )
19  _____   )

20

21  Plaintiff complains and alleges as follows:

22                          PARTIES

23      1.  At all material times, plaintiff Tami Greenwald was a

24  resident of the City and County of San Francisco, California.

25  The employment contract on which she sues herein was made in and

26  to be performed in the State of California.  At all material

27

28                              1

1  times, plaintiff worked for THE BOHEMIAN CLUB, INC., [hereafter

2  "Bohemian Club"], an all-male social club located in the City and

3  County of San Francisco, California.

4       2.  Plaintiff is informed and believes that defendant

5  Bohemian Club is a California corporation with its principal

6  place of business in the City and County of San Francisco,

7  California.

8       3.  Plaintiff is informed and believes that defendant Albert

9  Bowen [hereafter "Bowen"] is a resident of the City and County of

10 San Francisco, California.  At all material times, defendant

11 Bowen was plaintiff's supervisor and was acting at least in part

12 within the course and scope of his employment with the Bohemian

13 Club.

14      4.  Plaintiff is informed and believes that defendant

15 Richard Brandenburg [hereafter "Brandenburg"] is a resident of

16 the City and County of San Francisco, California.  At all

17 material times, defendant Brandenburg was plaintiff's supervisor

18 and was acting at least in part within the course and scope of

19 his employment with the Bohemian Club.

20      5.  Plaintiff is informed and believes that defendant Dan

21 Campbell [hereafter "Campbell"] is a resident of the City and

22 County of San Francisco, California.  At all material times,

23 defendant Campbell was plaintiff's supervisor and was acting at

24 least in part within the course and scope of his employment with

25 the Bohemian Club.

26      6.  The true names and capacities of the defendants named

27

28                                  2

1  herein as Does 1 through 99, inclusive, whether individual,

2  corporate, associate or otherwise, are unknown to

3  plaintiff who therefore sues such defendants by fictitious names

4  under California Code of Civil Procedure §474.  Plaintiff is

5  informed and believes that Doe defendants are California

6  residents.  Plaintiff will amend this Complaint to show such true

7  names and capacities when they have been determined.  Each

8  defendant was an agent of the other defendants and ratified the

9  conduct of the other defendants.

10                          FACTUAL BACKGROUND

11      7.  On or about March 3, 2003, plaintiff began full-time

12  employment at the Bohemian Club as a line cook.  Plaintiff had

13  been recruited by Albert Bowen, (hereafter "Bowen"), the Director

14  of Human Resources, to relocate from Phoenix, Arizona, to San

15  Francisco, California, to work at the Bohemian Club in San

16  Francisco, as well as the Bohemian Grove in Monte Rio,

17  California.

18      8.  As part of the recruitment effort by Bowen, plaintiff

19  was promised by Bowen, in the course and scope of his employment

20  as Director of Human Resources for the Bohemian Club, relocation

21  pay to cover the cost of her moving expenses, as well as the cost

22  of buying out her new lease in the Phoenix area.  In justifiable

23  reliance thereon, plaintiff relocated to San Francisco.

24      9.  After plaintiff arrived in San Francisco, and when

25  plaintiff asked for the relocation expenses, Bowen claimed that

26  the General Manager of the club, Matthew Oreggero, (hereafter

27

28                                  3

1  "Oreggero"), had changed his mind about the relocation
2  compensation, but that plaintiff would be allowed to stay on Mr.
3  Bowen's couch until she saved enough money to get an apartment of
4  her own.  Plaintiff did not know anyone with whom she could
5  reside in San Francisco, and no longer had a lease in Phoenix.
6  As a direct and proximate result of defendants' bad faith, and
7  failure to reimburse approximately $5,000 in relocation expenses,
8  plaintiff had no reasonable alternative but to accept said offer
9  and sleep on Bowen's couch until she could save enough money to
10  rent a domicile of her own.

11      10.  During her stay on Bowen's couch, and in the course and
12  scope of his employment as Director of Human Resources, Bowen
13  repeatedly told plaintiff not to tell any coworkers that she was
14  staying on Bowen's couch, while Bowen himself told several staff
15  members, including General Manager Oreggero, about the living
16  arrangement, willfully and falsely implying in so doing that
17  plaintiff and Bowen might be engaged in a sexual relationship,
18  thereby creating a hostile and harassing work environment for the
19  plaintiff.  Plaintiff reasonably believed that she might be
20  terminated if she disobeyed a direct order from Bowen in his
21  capacity as Director of Human Resources.  When other employees at
22  work asked whether or not he was engaged in sexual relations with
23  the plaintiff, and in the course and scope of his employment,
24  Bowen failed to deny that sexual relations were taking place,
25  willfully and by omission reinforcing the untrue insinuation that
26  he and plaintiff were engaged in sexual relations, thereby
27
28                              4

1  creating an oppressive and hostile work environment for the

2  plaintiff.

3      11.  Also during her stay on Bowen's couch, which was

4  directly and proximately caused by defendant's bad faith refusal

5  in the course and scope of his employment as Director of Human

6  Resources to reimburse plaintiff's relocation expenses as

7  previously agreed, an agreement upon which the plaintiff

8  reasonably and justifiably relied while incurring approximately

9  $5,000 in relocation expenses, Bowen habitually would engage in

10 intercourse with another Bohemian Club employee, Karen McDonald

11 (hereafter "McDonald") in the next room, and then talk about the

12 incident to plaintiff in graphic detail, such as telling

13 plaintiff that he loved performing oral sex on McDonald while she

14 was menstruating.  Bowen also asked plaintiff if she ever allowed

15 men to perform oral sex on her when she was menstruating, thereby

16 creating a hostile and oppressive environment between plaintiff

17 and McDonald, as well as between plaintiff and defendant in the

18 course and scope of his employment and his capacity as Director

19 of Human Resources.

20     12.  In the course and scope of his employment, Bowen

21 repeatedly made sexual advances at the plaintiff, and plaintiff,

22 who was at the mercy of Bowen due to his bad faith refusal in the

23 course and scope of his employment and in his capacity as

24 Director of Human Resources to reimburse plaintiff $5,000 in

25 moving expenses, as previously agreed, repeatedly rebuffed

26 Bowen's advances, frequently pretending to be asleep when he got

27

28                                5

1   home from work.  On June 23rd, 2003, Bowen came home intoxicated

2   and asked plaintiff to touch his genitals in a sexual manner, and

3   plaintiff replied "no, leave me alone."  At that point in time,

4   plaintiff still had not saved enough money to live on her own,

5   had not received any of reimbursement for her moving expenses,

6   and had no reasonable alternative to living on Bowen's couch,

7   sometimes even sleeping outside in her car.

8       13.  In August of 2003, Bowen asked plaintiff if she would

9   allow him to watch her take a shower, and plaintiff replied "No,

10  you're my boss."  In fact, a few days after that, Bowen did,

11  intentionally and with malice, walk in on plaintiff while she was

12  in the shower, and plaintiff, due to the oppressive and harassing

13  nature of the Bowen's conduct in the course and scope of his

14  employment as Director of Human Resources, and the mental anguish

15  his conduct caused her, moved out of the apartment a few days

16  later.  Not long after that, defendant, at work and in the course

17  and scope of his employment, remarked to plaintiff that plaintiff

18  had "a nice body, and it looked great through the shower curtain,

19  like an hourglass figure."  He also said to plaintiff that he

20  "didn't realize you had such nice boobs."

21      14.  Between February 17th and 26th, 2004, soon after

22  plaintiff had undergone ovarian surgery, and in the course and

23  scope of his employment as plaintiff's supervisor, defendant

24  Campbell snidely, condescendingly and repeatedly asked plaintiff

25  "how her ovaries were doing," such that plaintiff suffered great

26  emotional distress.  Defendant Campbell also asked plaintiff, in

27

28                                  6

1    front of coworkers, when she mentioned that she needed to use the

2    restroom whether she was going to urinate or defecate.    Plaintiff

3    was grossly offended such that she suffered great emotional

4    distress.    Defendant Campbell is known around the Club for making

5    such inappropriate remarks, and defendant's inappropriate

6    behavior created a hostile and oppressive work environment.

7         15.    In June 2004, at a Bohemian Club event known as "Spring

8    Jinks," Bowen, at the event and in the course and scope of his

9    employment as Director of Human Resources, repeatedly made lewd

10   and sexual remarks to plaintiff about the young servers he had

11   hired for the event, thereby creating a hostile and harassing

12   work environment and directly and proximately causing plaintiff

13   great mental anguish.    Bowen made comments such as "did you see

14   the size of their tits, damn I hire some hot girls, that's why I

15   have this job," and "the things I could do to them.    The members

16   love me because of the girls I hire." Plaintiff complained to

17   Bowen about the remarks, and Bowen, in the course and scope of

18   his employment and in his capacity as Director of Human

19   Resources, replied "I am protected here and Matt Oreggero loves

20   me and would never fire me."

21        16.    On July 15, 2004 plaintiff suffered a back injury in

22   the course and scope of her employment that put plaintiff on

23   modified duty such that she was not to lift more than 10 pounds

24   on the job.    Notwithstanding such restriction, defendant

25   Brandenburg, in the course and scope of his employment as

26   plaintiff's supervisor, would routinely require plaintiff to lift

27

28                                    7

1  more than 10 pounds in the course and scope of her employment,

2  thereby willfully, unlawfully, and with malice refusing to

3  provide plaintiff with a reasonable accommodation for her

4  disability. Plaintiff has suffered both physical and mental

5  anguish as a direct and proximate result of said refusal to

6  provide reasonable accommodation.

7      17.  On July 24th, 2004, plaintiff witnessed Bowen, in the

8  course and scope of his employment and in his capacity as

9  Director of Human Resources, yelling at McDonald in the Human

10 Resources trailer at the Bohemian Grove, and to plaintiff's great

11 distress witnessed McDonald crying.  McDonald later informed

12 plaintiff that the fight had concerned lewd and sexual remarks

13 that Bowen, in the course and scope of his employment and in his

14 capacity as Director of Human Resources, was making about the

15 female serving staff at the Bohemian Grove.

16     18.  On December 15th, 2004, an employee named Morris told

17 plaintiff that she was uptight and "needed to get laid," and

18 plaintiff, greatly distressed and suffering extreme mental

19 anguish due to her substantial history of harassment at the

20 Bohemian Club, responded by yelling at Morris not to talk to her

21 that way.  Plaintiff complained to Dan Campbell (hereafter

22 "Campbell"), a manager at the club, and repeated what had been

23 said to her to Campbell.  Campbell took plaintiff to Bowen, who,

24 in the course and scope of his employment and in his capacity as

25 Director of Human Resources, told plaintiff to "deal with it.

26 Maybe he's right," thereby tolerating and implicitly endorsing a

27

28                              8

1  hostile and harassing work environment, and directly and

2  proximately causing great mental distress, suffering and anguish

3  for the plaintiff.

4      19. On December 31st, 2004, Bowen, in the course and scope

5  of his employment and in his capacity as Director of Human

6  Resources, described lewdly and in graphic detail the kinds of

7  sexual acts he wanted to perform on the plaintiff, and told

8  plaintiff he wanted to see the "expressions you would make while

9  I'm fucking you." The comment directly and proximately created a

10  hostile and harassing work environment, and directly and

11  proximately caused the plaintiff great mental suffering and

12  anguish, such that plaintiff would hide in a pastry room or a

13  walk-in to avoid contact with Bowen.

14      20.  On February 8th, 2005, Bowen, in the course and scope

15  of his employment and in his capacity as Director of Human

16  Resources, asked plaintiff if she would have sexual intercourse

17  with him on the internet so that others could watch, and offered

18  to give plaintiff most of the money, since he "makes more money

19  than you do," thereby creating a hostile and harassing work

20  environment, and directly and proximately causing great mental

21  distress and anguish on the part of the plaintiff.

22      21.  On May 24th, 2005, Bowen, in the course and scope of

23  his employment and in his capacity as Director of Human

24  Resources, was taking a picture of plaintiff to update

25  plaintiff's employee badge for the upcoming Bohemian Grove event,

26  and, bent over and photographed plaintiff's breasts rather than

27

28                                    9

1  her face, and said to plaintiff, "I want to have sex with you.

2  You're so sexy, and you make me hard."  Plaintiff told Bowen to

3  stop photographing her, and left the club, directly and

4  proximately suffering great mental anguish, crying all the way

5  home.

6      22.  On September 8th, 2005, in the course and scope of his

7  employment and in his capacity as Director of Human Resources,

8  Bowen told plaintiff, " I like to eat girls out when they're on

9  their period.  I'm like a vampire."  The remark directly and

10  proximately created a hostile and harassing work environment, and

11  directly and proximately caused plaintiff great mental suffering,

12  distress and anguish.

13      23.  On September 8th, 2005, Bowen, in the course and scope

14  of his employment and in his capacity as Director of Human

15  Resources, asked plaintiff if her "tits were real."  The remark

16  directly and proximately created a hostile and harassing work

17  environment, and directly and proximately resulted in great

18  mental anguish, distress and suffering on the part of the

19  plaintiff.

20      24.  On September 14th, 2005, as plaintiff was leaving work,

21  Bowen, in the course and scope of his employment and in his

22  capacity as Director of Human Resources, stared lewdly at the

23  plaintiff as she was leaving work, directly and proximately

24  creating a hostile and harassing environment, and directly and

25  proximately caused plaintiff great mental suffering, distress and

26  anguish.

27

28                              10

25.  On September 15th, 2005, plaintiff went to Bowen in his office to discuss her vacation time, and Bowen, in the course and scope of his employment and in his capacity as Director of Human Resources, as plaintiff was leaving Bowen's office, said to plaintiff, "Your ass looked so hot in those jeans you were wearing yesterday, you should wear them more often."  The remark directly and proximately created a harassing and hostile work environment, and directly and proximately resulted in great mental anguish on the part of the plaintiff, who felt disgusted and went home crying once again.

26.  On September 22nd, 2005, Brandenburg verbally abused plaintiff, who at the time was on modified duty due to a previous work place injury, telling plaintiff in front of Sous Chef Kevin Miller, co-worker Jose Luna, and Bowen, "you are a waste of a paycheck.  I don't want you here anyway, if you weren't union I wouldn't schedule you.  If you think it's hard now, just wait, little girl, it will get worse."  The comments created a hostile and harassing work environment based on her disability status, and defamed plaintiff in front of coworkers, damaged plaintiff's reputation in the work place, and caused plaintiff great mental suffering, anguish and distress; and Bowen, in the course and scope of his employment and in his capacity as Director of Human Resources, did nothing to cure the hostile and harassing environment, and by his silence implicitly tolerated and endorsed said hostile and harassing environment.  After this meeting, plaintiff complained to Bowen about what had just happened, and

11

1  the harassing treatment she had received in front of Bowen at the

2  hands of her superior Brandenburg, and Bowen responded and

3  retaliated against plaintiff for complaining about harassment by

4  trying to switch plaintiff to part time duty, which would have

5  had the practical effect of eliminating plaintiff from the work

6  schedule.

7      27.  On September 27th, 2005, Brandenburg ordered plaintiff

8  and co-worker Bob Dominguez (hereafter "Dominguez")to ice a tray

9  of fish that weighed approximately fifty pounds, although

10 Brandenburg knew that plaintiff at the time was on modified duty

11 due to a work place back injury that plaintiff suffered July 15

12 of 2004, and not supposed to lift more than ten pounds.  As a

13 direct and proximate result of Brandenburg's unlawful refusal to

14 provide reasonable accommodation that day, plaintiff suffered a

15 subsequent back injury, and has suffered both physical and mental

16 anguish as a direct and proximate result of said refusal to

17 provide reasonable accommodation.

18     28.  The following day, on September 28th, 2005, plaintiff

19 explained to Brandenburg that she had hurt her back the previous

20 day, and Brandenburg told plaintiff that he did not have "time to

21 deal with it" and to wait for Bowen to arrive.  A short while

22 later, Dominguez came up to plaintiff and told her that Bowen

23 wanted to see her.

24     29.  When plaintiff went to Brandenburg's office to talk

25 about the back injury suffered the day before, she discovered

26 Brandenburg writing her up for allegedly failing to ice the fish

27

28                              12

1  the previous day.  Plaintiff asked Bowen if Brandenburg had

2  informed Bowen of here most recent injury, and Bowen informed her

3  that Brandenburg had not.  After Brandenburg left the office,

4  defendant Bowen told plaintiff that Brandenburg had said to Bowen

5  that "he would really make sure that if and when she [plaintiff]

6  comes back he will really make sure that she gets hurt by

7  overloading her schedule."  Bowen unlawfully told plaintiff the

8  she needed to be 100% recovered for her to return to work.  At

9  the time plaintiff, as a direct and proximate result of Bowen and

10  Brandenburg's refusal to provide reasonable accommodation, was in

11  excruciating pain, and she agreed to sign the write up only to be

12  allowed to leave to visit the hospital, suffering both physical

13  and mental anguish as a direct and proximate result thereof.

14      30.  Bowen asked plaintiff to step out of Brandenburg's

15  office, and after plaintiff locked up her knives to go to the

16  hospital, and as plaintiff and Bowen were walking toward the

17  elevator, Bowen asked plaintiff "as long as we've known each

18  other, how come we've never had sex?" thereby, in the course and

19  scope of Bowen's employment and in his capacity as Director of

20  Human Resources, directly and proximately causing plaintiff great

21  mental anguish, suffering and distress, and directly and

22  proximately creating a hostile and harassing work environment.

23      31.  In or around December of 2006, or January of 2007,

24  plaintiff's nurse case manager Candace Kurt informed Bowen that

25  plaintiff could come back to work with a lifting restriction of

26  20 pounds.  Defendants Brandenburg and Bowen claimed that no

27

28                                    13

1  reasonable accommodation could be made for plaintiff in her

2  previous position, or in a comparable position, and plaintiff, as

3  a direct and proximate result of that unlawful failure to provide

4  reasonable accommodation, has been unable to return to work at

5  the Bohemian Club, and continues to this day to suffer both

6  professionally and mentally as a direct and proximate thereof.

7  Such refusal to provide reasonable accommodation is retaliatory

8  in nature, and is a direct and proximate result of plaintiff's

9  refusal to engage in sexual relations with the Director of Human

10  Resources, Albert Bowen.  Such persistent and ongoing conduct as

11  constructively terminated plaintiff from her position as cook at

12  the Bohemian Club, and she has suffered professionally,

13  physically, and emotionally as a direct and proximate result

14  thereof.

15      32.  As a direct and proximate cause of this long, ongoing,

16  and well-established pattern of abuse, and the ongoing refusal on

17  the part of the individual defendants and the Bohemian Club to

18  provide reasonable accommodation and provide a workplace free of

19  sexual and disability harassment, plaintiff continues to endure

20  great mental distress, suffering and anguish, such that she has

21  been forced, and continues to be forced, to undergo stress-

22  related psychological therapy.  As a direct and proximate result

23  of this retaliatory constructive termination, wherein defendants

24  have, due to plaintiff's continual rejection of repeated sexual

25  advances on the part of the Bohemian Club's director of human

26  resources, Bowen, made it impossible for the plaintiff to return

27

28                              14

1  to work under circumstances acceptable to any reasonable woman;

2  and wherein defendants have conspired, and continue to conspire,

3  to refuse to correct the breach of their legal duty to provide a

4  workplace free of harassment and discrimination, and as a direct

5  and proximate cause thereof, plaintiff has suffered great

6  psychological distress and anguish, and has been, and continues

7  to be, unable to pursue her chosen career as a professional chef.

8      33.  Furthermore, the repeated predatory sexual advances by

9  Bowen toward the plaintiff have directly and proximately created

10  a hostile work environment wherein any reasonable woman would

11  fear for her physical safety.  This ongoing and continual failure

12  by Bowen and the Bohemian Club to provide a workplace free of the

13  threat of sexual assault by senior management such as Bowen, the

14  director of human resources, has directly and proximately created

15  a hostile and oppressive work environment completely unacceptable

16  to any reasonable woman, to which no reasonable woman could be

17  expected to return, such that plaintiff has been, and continues

18  to be, constructively terminated from her position, and unable to

19  pursue her career as chef.

20      34.  Finally, the refusal by plaintiff's direct supervisor

21  Brandenburg, and subsequently Bowen, to provide reasonable

22  accommodation to plaintiff as cook at the Bohemian Club has

23  directly and proximately made it impossible for plaintiff to

24  return to work, and constructively terminated her therefrom.

25  This ongoing and retaliatory constructive termination has

26  directly and proximately caused, and continues to cause,

27

28                              15

1  plaintiff great mental distress and suffering.

2
                        FIRST CAUSE OF ACTION.
3                 (Sex Discrimination/Sexual Harassment)
                    (Cal. Government Code §12940)
4

5      35.  The allegations of paragraphs 1 through 15, 17 through

6  25, 30, and 32 through 33 are realleged and incorporated herein
7
   by reference.  This cause of action is pleaded against defendants
8
   Bohemian Club, Bowen, and Campbell.
9
10     36.  Defendants were at all material times employers within

11 the meaning of California Government Code section 12926(d) and,

12 as such barred from discriminating or retaliating in employment

13 decisions on the basis of sex as set forth in California

14 Government Code section 12940.

15     37.  Plaintiff was at all material times an employee covered

16 by California Government Code section 12940 prohibiting
17
   discrimination or retaliation in employment on the basis of sex.
18
       38.  Defendants and each of them engaged in a pattern and
19
   practice of discrimination against female employees, including
20
   plaintiff, on the basis of sex in violation of California
21
   Government Code section 12940 by engaging in a course of conduct
22
23 that included subjecting plaintiff to sexual harassment and

24 hostility because of her sex.  This behavior continued until

25 plaintiff left on disability due to a work place back injury.

26

27

28                              16

39.  Further, Doe defendants and each of them, aided and abetted defendants Bohemian Club, Bowen, and Campbell in engaging in illegal discrimination on the basis of sex against female employees, including subjecting plaintiff to sexual harassment and hostility because of her sex, in violation of California Government Code section 12940(i).

### SECOND CAUSE OF ACTION
(Failure to Maintain Environment Free from Harassment- California Government Code §12940(j))

40.  The allegations of paragraphs The allegations of paragraphs 1 through 34 are realleged and incorporated herein by reference.  This cause of action is pleaded against the all defendants.

41.  Defendants and each of them failed to take all reasonable steps to prevent discrimination and harassment against plaintiff from occurring, and to take immediate and appropriate corrective action to remedy the harassment, in violation of California Government Code section 12940 (j), by engaging in the course of conduct set forth in paragraphs 1 through 34.

42.  Specifically, the Bohemian Club failed and has failed to the present time to take any disciplinary action against Bowen, Brandenburg, and Campbell, such as issuing a formal warning, imposing probation, suspension or termination for either the sex or disability discrimination suffered by plaintiff.

17

43.  Plaintiff is informed and believes that defendant Bohemian Club has never had an adequately written policy about sexual or disability harassment, has never adequately conducted any sexual or disability harassment training, and has never adequately posted any sexual and disability harassment policies for its supervisors or employees.

WHEREFORE, plaintiff requests relief as hereinafter provided.

### THIRD CAUSE OF ACTION
(Disability harassment / disability discrimination)
(California Government Code §12940)

44. The allegations of paragraphs 16, 26 through 29, 31 and 34 are realleged and incorporated herein by reference.  This cause of action is pleaded against the Bowen, Brandenburg and the Bohemian Club.

45. Defendants were at all material times employers within the meaning of California Government Code section 12926(d) and, as such barred from discriminating or retaliating in employment decisions on the basis of disability as set forth in California Government Code section 12940.  Plaintiff was at all material times an employee covered by California Government Code section 12940, and the defendants have willfully and in bad faith refused to provide reasonable accommodation to plaintiff as mandated by California Government Code §12940.

18

1    WHEREFOR, plaintiff requests relief as hereinafter provided.

2

3                        FOURTH CAUSE OF ACTION
           (Intentional Infliction of Emotional Distress)
4

5        46.  The allegations of paragraphs 1 through 34 are

6    realleged and incorporated herein by reference.  This cause of

7    action is pleaded against all defendants.

8        47.  The conduct set forth hereinabove was extreme and

9    outrageous and an abuse of the authority and position of

10   defendants and each of them.  Said conduct was intended to cause

11   severe emotional distress, or was done in conscious disregard of

12   the probability of causing such distress.  Said conduct exceeded

13   the inherent risks of employment and was not the sort of conduct

14   normally expected to occur in the workplace.  Defendants and each

15   of them abused their position of authority toward the plaintiff,

16

17   and engaged in conduct intended to humiliate the plaintiff and to

18   convey the message that she was powerless to defend her rights.

19   Defendant Bohemian Club abused its authority and directly injured

20   plaintiff by its ratification of defendants Bowen, Campbell, and

21   Brandenburg, and by its Department of Human Resources failure to

22   protect the violations of the privacy of the plaintiff.

23

24       48.  The foregoing conduct did in fact cause plaintiff to

25   suffer extreme emotional distress.  As a proximate result of said

26   conduct, plaintiff suffered embarrassment, anxiety, humiliation,

27   and emotional distress, and will continue to suffer said

28                                  19

1   emotional distress in the future in an amount according to proof.

2       WHEREFORE, plaintiff requests relief as hereinafter

3   provided.

4                   FIFTH CAUSE OF ACTION
5                    (Invasion of Privacy)

6       49.  The allegations of paragraphs 1 through 15, 17 through

7   25, 30, and 32 through 33 are realleged and incorporated herein

8   by reference.  This cause of action is pleaded defendants Bowen,

9   Campbell, and the Bohemian Club.

10      50.  Defendant Bowen, without plaintiff's consent,

11  repeatedly intruded into plaintiff's privacy by the conduct set

12  forth above.

13

14      51.  Defendant Bohemian Club ratified Bowen's conduct

15  invading plaintiff's privacy by communicating private information

16  to other employees about plaintiff who had no need to know the

17  information.

18      52.  The intrusions described above were offensive and

19  objectionable to plaintiff and to a reasonable person of ordinary

20  sensibilities.  The intrusions were into aspects of plaintiff's

21  life that were private and were entitled to remain private.

22      WHEREFORE, plaintiff requests relief as hereinafter

23  provided.

24                  SIXTH CAUSE OF ACTION
25          (Negligent Infliction of Emotional Distress)

26

27      53.  The allegations of paragraphs 1 through 34 are

28                          20

1  realleged and incorporated herein by reference.  This cause of

2  action is pleaded against all defendants.

3      54.  In carrying out the above conduct, defendants breached

4  a duty owed to plaintiff to provide a workplace free from unfair

5  treatment, discrimination, and retaliation, and abused their

6  positions of authority toward her.  Said conduct exceeded the

7  inherent risks of employment and was not the sort of conduct

8  normally expected to occur in the workplace.  The Bohemian Club

9

10  violated said duty directly by ratifying Bowen, Campbell, and

11  Brandenburg's conduct.

12      55.  Defendants and each of them knew, or should have known,

13  that said conduct would cause plaintiff extreme emotional

14  distress.  As a proximate result of  defendants' negligent

15  conduct, plaintiff suffered and will continue to suffer extreme

16  humiliation, embarrassment, mental anguish, and emotional

17  distress in an amount according to proof.

18

19  WHEREFORE, plaintiff requests relief as hereinafter

20  provided.

21              SEVENTH CAUSE OF ACTION
           (Breach of Implied-in-Fact Contract)
22

23      56.  The allegations of paragraphs 1 through 34 are

24  realleged and incorporated herein by reference.  This cause of

25  action is pleaded against the Bohemian Club.

26      57.  During the entire course of plaintiff's employment with

27

28                          21

1  the Bohemian club, an employment agreement existed between

2  plaintiff and the Bohemian Club, which included, but was not

3  limited to, the following terms and conditions:

4     (a)  Plaintiff would be able to continue her employment with

5  the Bohemian club indefinitely as long as she carried out her

6  duties in a proper and competent manner;

7

8     (b)  Plaintiff would not be denied fair treatment or be

9  compelled to resign for other than good cause;

10    (c)  The Bohemian Club would not discriminate against

11 plaintiff on the basis of sex or allow her to be sexually

12 harassed or retaliated against.

13    58.  This total employment agreement was evidenced by

14 various written documents, oral representations to plaintiff by

15 the Bohemian Club's agents and employees, and the parties' entire

16 course of conduct, including the following:

17    (a)  Plaintiff is informed and believes and therefore

18 alleges that portions of this contract are embodied in the

19 Bohemian Club's written personnel policies and discipline

20 procedures;

21

22    (b)  There is an established policy within the Bohemian Club

23 known to plaintiff and relied on by her, that employees such as

24 plaintiff, who had performed services as a good and faithful

25 employees, would be treated fairly, would not have employment

26 decisions about them without good cause, and would not be

27

28                          22

1   subjected to discrimination or retaliation; and

2       (c)   Plaintiff's employment history at the Bohemian Club was

3   excellent during the more than two years that she worked there.

4   She received outstanding performance appraisals and was assigned

5   increased responsibilities during her employment.   She received

6   written and oral praise for her hard work, efficiency, and

7   accomplishments at the Bohemian Club.

8

9       59.   As a result of the above representations, plaintiff

10  came reasonably to expect and to rely on the promise of job

11  security and fair treatment.   Such statements and acts by the

12  Bohemian Club communicated to plaintiff the idea that she had

13  performed satisfactorily and that job opportunities would be

14  available. Plaintiff in good faith relied upon these

15  representations and believed them to be true.

16      60.   Plaintiff's reliance on and belief in and acceptance in

17  good faith of all the assurances, promises and representations

18  listed in paragraphs 57 and 58, led plaintiff throughout her

19  employment to reasonably believe that her employment was secure

20  and that there existed thereby a contract of continuous

21  employment with the Bohemian Club.

22

23      61.   Plaintiff undertook and continued employment and duly

24  performed all conditions of the agreement to be performed by her.

25  Plaintiff has at all times been ready, willing and able to

26  perform and has offered to perform all conditions of this

27

28                              23

agreement to be performed by her.

62. Despite the representations made to plaintiff and the reliance she placed on them, the Bohemian Club failed to carry out its responsibilities under, and breached the terms of, the employment agreed by, among other things, the following conduct:

(a) By failing to provide plaintiff with a work environment free from harassment, discrimination and retaliation;

(b) By denying plaintiff fair treatment and work opportunities comparable to those of other employees; and

(c) By retaliating and constructively discharging plaintiff when she complained of unfair treatment.

63. At all times material hereto, plaintiff performed her job in a satisfactory and trustworthy manner.

64. The Bohemian Club breached the aforementioned total employment agreement by the conduct set forth above without regard to or in compliance with the requirements of the aforesaid agreement, and for reasons that were pretextual and untrue. Despite complaints to management regarding the harassment or tolerance thereof by defendants Bowen, Campbell and Brandenburg, it was never stopped. In fact plaintiff's unwillingness to accept the harassment resulted in increased harassment and other retaliatory behavior.

WHEREFORE, plaintiff requests relief as hereinafter provided.

24

## EIGHTH CAUSE OF ACTION
### (Breach of the Covenant of Good Faith and Fair Dealing)

65.   The allegations of paragraphs 1 through 34 are realleged and incorporated herein by reference.   This cause of action is pleaded against the Bohemian Club.

66.   The aforementioned employment agreement contained an implied covenant of good faith and fair dealing by which the Bohemian Club promised to give full cooperation to plaintiff and her performance under the employment agreement and to refrain from doing any act that would prevent or impede plaintiff from performing all the conditions of the agreement to be performed by her or any act that would prevent or impede plaintiff's enjoyment of the fruits thereof.   Specifically, said covenant of good faith and fair dealing required defendants to fairly, honestly, and reasonably perform the terms and conditions of said agreement.

67.   The Bohemian Club breached said implied covenant of good faith and fair dealing by denying plaintiff a work environment free from harassment, discrimination and retaliation. The Bohemian Club further breached said implied covenant of good faith and fair dealing by denying plaintiff fair treatment.   Such actions were taken at a time when plaintiff was fully capable of and was in fact performing her job in a fully satisfactory manner.   Such actions were not taken because of unsatisfactory

25

1  job performance by plaintiff; they were taken at least in part

2  because of plaintiff's complaints of harassment and retaliation.

3      68.  Plaintiff is informed and believes that the Bohemian

4  Club breached its contract with plaintiff without conducting any

5  reasonable investigation concerning its obligations under said

6  contract, without good or sufficient cause, for reasons

7  extraneous to the contract, and for the purpose of frustrating

8  plaintiff's enjoyment of the benefits of the contract.

9

10     WHEREFORE, plaintiff requests relief as hereinafter

11 provided.

12

13                      NINTH CAUSE OF ACTION
        (Retaliation - California Government Code §12940(h))
14

15     69.  The allegations of paragraphs 1 through 34 are

16 realleged and incorporated herein by reference.  This cause of

17 action is pleaded against Brandenburg, Bowen and the Bohemian

18 Club.

19     70.  The above defendants have retaliated, and continue to

20 retaliate, against plaintiff in violation of Government Code

21 section 12940(h), by engaging in a course of retaliatory conduct,

22 among others, set forth in paragraphs 16, 26 through 29, 31 and

23 34 above, when she complained about sexual harassment, disability

24 harassment, and a work environment generally rife with hostility

25 and discrimination.  This retaliation by the above defendants, in

26 the course and scope of their employment, persists to this day in

27

28                              26

1 their ongoing refusal to provide reasonable accommodation to

2 plaintiff.

3      WHEREFOR, plaintiff requests relief as hereinafter provided.

4

5                        PRAYER FOR RELIEF

6

7

8      WHEREFORE, plaintiff requests relief as follows:

9

10     1.  For special and economic damages, including back pay and

11 front pay, for all causes of action.

12     2.  For general and non-economic damages for all causes of

13 action;

14     3.  For punitive damages according to proof for all causes

15 of action except the sixth and seventh;

16     4.  For prejudgment interest at the prevailing legal rate;

17     5.  For injunctive relief including requiring defendants to

18 adopt reasonable postings and changes in personnel policies and

19 procedures regarding sexual and disability harassment and

20 retaliation, requiring training about sexual and disability

21 harassment for all employees, for a permanent injunction

22 enjoining defendants, their agents, successors, employees, and

23 those acting in concert with them in each unlawful practice,

24 policy, usage, and customer set forth hereinabove, and for such

25 other injunctive relief as the Court may deem proper;

26

27

28                        27

6.  For the costs of the suit, including reasonable attorney fees; and

7.  For such other and further relief as the Court may deem proper.

Date:                              LAW OFFICES OF BURKE HANSEN

                                   By: _____

                                   Burke Hansen

                                   Attorney for Plaintiff


## JURY DEMAND

Plaintiff demands trial by jury in this action.

Date:                              LAW OFFICES OF BURKE HANSEN

                                   By: _____

                                   Burke Hansen

                                   Attorney for Plaintiff

28