# EXHIBIT I

COLLECTIVE BARGAINING AGREEMENT

BETWEEN

THE BOHEMIAN CLUB

AND

SAN FRANCISCO
HOTEL EMPLOYEES AND RESTAURANT
EMPLOYEES UNION, LOCAL 2

EFFECTIVE AUGUST 1, 2000 – JULY 31, 2005




# TABLE OF CONTENTS

| Section | Title | Page Number |
|---|---|---|
| 1 | Recognition | 1 |
| 2 | Hiring | 1 |
| 3 | Probationary Period | 3 |
| 4 | Maintenance of Membership | 3 |
| 5 | Business Representatives | 3 |
| 6 | Discrimination | 3 |
| 7 | Labor Relations | 4 |
| 8 | Grievance Procedure | 4 |
| 9 | Discipline | 8 |
| 10 | Health & Welfare, Pension & Education Plan Trust Agreements | 9 |
| 11 | Health & Welfare, Pension & Education Plan Eligibility | 11 |
| 12 | Health & Welfare, Pension & Education Fund Contributions | 13 |
| 13 | Past Practices | 16 |
| 14 | Term and Reopening of Agreement | 16 |
|  | Signature Page | 17 |

## General Rules

| | | |
|---|---|---|
| 1 | Workday | 18 |
| 2 | Work Week | 18 |
| 3 | Salaries | 18 |
| 4 | Reporting Pay | 19 |
| 5 | Work Schedule | 19 |
| 6 | Shop Stewards | 19 |
| 7 | Meals | 19 |
| 8 | Employee's Eating Facilities | 20 |
| 9 | Dressing Rooms | 20 |
| 10 | Employees - Definition of | 21 |
| 11 | Completion of Shifts | 22 |
| 12 | Rest Period | 22 |
| 13 | Vacations | 22 |

| Section | Title | Page Number |
|---|---|---|
| 14 | Leaves of Absence | 24 |
| 15 | Holidays | 24 |
| 16 | Seniority | 26 |
| 17 | Vacancies, Promotions and Transfer | 27 |
| 18 | Employment Conditions | 27 |
| 19 | Minimum Rate of Pay | 28 |
| 20 | Equal Pay for Men and Women | 28 |
| 21 | Individual Contracts | 28 |
| 22 | Combination Jobs | 28 |
| 23 | Construction | 29 |
| 24 | Sick Leave | 29 |
| 25 | Funeral Leave | 30 |
| 26 | Jury Duty | 30 |
| 27 | Maternity Leave | 31 |
| 28 | Bulletin Boards | 31 |
| 29 | Union Buttons | 31 |
| 30 | Job Descriptions | 31 |
| 31 | Overtime | 31 |

## Craft Rules

### Food Preparation Department

| 1 | Shifts | 33 |
|---|---|---|
| 2 | Uniforms and Linens | 33 |
| 3 | Relief Cooks | 34 |
| 4 | Kitchen Stations | 34 |
| 5 | Night Chef | 34 |
| 6 | All Other Cooks | 34 |
| 7 | Apprentices | 35 |
| 8 | Number of Cooks | 35 |
| 9 | Meals | 35 |
| 10 | Out of Town and Off-Premises Work | 35 |



| Section | Title | Page Number |
|---------|-------|-------------|

### Dining Room Department

| | | |
|---|---|---|
| 1 | Shifts | 37 |
| 2 | Buspersons | 37 |
| 3 | Banquets | 37 |
| 4 | Banquet Shifts, Covers, Overages | 38 |
| 5 | Banquet Gratuities | 39 |
| 6 | Special Occasions & Off-Premises Work | 40 |
| 7 | Ticket Sales | 41 |
| 8 | Overtime | 41 |
| 9 | Definition of Work | 41 |
| 10 | Losses and Penalties | 41 |
| 11 | Uniforms and Linens | 42 |
| 12 | Night Shift | 42 |
| 13 | Thirty Hours Per Week | 42 |
| 14 | Contributions | 42 |

### Beverage Department

| | | |
|---|---|---|
| 1 | Shifts | 43 |
| 2 | Banquets and Special Occasions | 43 |
| 3 | Banquet Gratuities | 43 |
| 4 | Ticket Sales | 45 |
| 5 | Off-Premises Work | 45 |
| 6 | New Year's Eve | 45 |
| 7 | Vacancies | 46 |
| 8 | Uniforms and Linens | 46 |
| 9 | Breakage | 46 |

### Stewards Department

| | | |
|---|---|---|
| 1 | Shifts | 47 |
| 2 | Uniforms and Linens | 47 |
| 3 | Combination Busperson-Dishwasher | 47 |
| 4 | Out-of-Premises Work | 48 |

| Section | Title | Page Number |
|---|---|---|
| 5 | New Year's Eve | 48 |
| 6 | Extra Miscellaneous Employees | 48 |
| 7 | Dishwashing Soap | 48 |
| 8 | Employee Upgrade | 48 |
| 9 | Dish-up | 48 |

## Housekeeping and Service Department

| Section | Title | Page Number |
|---|---|---|
| 1 | Shifts | 49 |
| 2 | Night Shift | 49 |
| 3 | Overtime | 49 |
| 4 | Special Uniforms or Dress | 49 |
| 5 | Definition of Work | 49 |

## WAGE SCALES

Wage and Benefit Increase Formula for 1999 ...... 51
Food Preparation Department Wage Scales ...... 51
Dining Room Department Wage Scales ...... 51
Beverage Department Wage Scales ...... 53
Stewards Department Wage Scales ...... 53
Housekeeping and Service Department Wage Scales ...... 53

Exhibit "A" - Checkoff Agreement ...... 55
Exhibit "B" - Side Letter #1 ...... 58
Exhibit "C" - Side Letter #2 ...... 59
Exhibit "D" - Side Letter #3 ...... 60

*opeiu-3-afl-cio(51)jy*

## PREAMBLE

THIS AGREEMENT made and entered into this _____ _ day of _____, 2000, by and between the HOTEL EMPLOYEES AND RESTAURANT EMPLOYEES UNION, LOCAL 2, of the Hotel Employees and Restaurant Employees International Union, affiliated with the AFL-CIO, hereinafter referred to as "the Union," and the BOHEMIAN CLUB, hereinafter referred to as "the Employer" or "the Club."

It is mutually agreed that it is the sole right of the management to manage the Club and to direct the working forces. Management of the Club includes determination of the type and scope of services and the methods, means, and procedures of providing services. The Employer has the right to establish and enforce reasonable rules and regulations governing the employment relationship. Finally, the parties recognize that the success of the Club's operations depends, in large part, on the personal responsibility of each employee to provide service to the best of his/her ability and to cooperate with management in ensuring the overall success of the organization.

## AGREEMENT

## SECTION 1. RECOGNITION

The Union shall be recognized as the sole bargaining agency for all the employees employed by the Employer coming under the jurisdiction of the Union. However, it is understood and agreed that this Agreement shall apply only to those classifications of employees as defined and set forth in the Craft Rules.

All other employees and job classifications are specifically exempted from any of the provisions of this Agreement or any award pursuant to such Agreement.

## SECTION 2. HIRING

(a)    In the hiring and discharging of employees, the Employer shall determine the suitability and competence of its employees within the provisions of this section, provided that such determination shall not be used for the purpose of discriminating against members of the Union or to circumvent the spirit and intent of this Agreement.

(b)    In filling all vacancies and hiring additional or new help, the Club shall apply to the Union and shall have the right to choose from among all applicants for referral and, except as otherwise provided in this section, to reject any job applicant referred by the Union.

In the event that the Union is not able to provide competent help suitable for the position to be filled, the Club shall be at liberty to hire persons not referred by the Union.

(c)    Any person hired by the Club who is not a member of the Union shall, within thirty (30) days after such hiring, make application for membership in the Union.

(d)    If such employee so hired makes application to join the Union, the Union agrees to accept such application and accept for membership such applicant on the same terms and conditions on which any employees, now members of the Union, are admitted to membership.

(e)    The Employer shall notify the Union on forms mutually satisfactory to both parties of the employment of all classifications of new regular employees under the jurisdiction of the Union within three (3) days, Sundays and holidays excepted, of employment of such individuals.



(f)    Selection by the Union of applicants for referral to jobs shall be on a non-discriminatory basis and shall not be based on, or in any way affected by, Union membership, bylaws, rules, regulations, constitutional provisions, or any other aspect or obligation of Union membership, policies, or requirements. In carrying out this provision, the Union shall maintain lists of applicants for referral for the various classification of jobs covered by this Agreement. Eligibility for registration on said lists shall be determined solely upon the basis of each applicant's experience and qualifications for the particular classification of work involved. When the Employer applies to the Union as provided in subsection (b) hereof, eligible applicants will be referred to the Employer in the order of their registration on said lists unless the Employer requests referral of a particular applicant or group of applicants for specified job openings. Said lists of eligible applicants shall be available to the Employer at the Union offices upon request.

(g)    The Club and the Union shall post in places where notices for employees and applicants for employment or referral to employment are customarily posted, all of the provisions of the foregoing paragraphs (a), (b), (c), (d), (e), and (f). Any person believing that the provisions of said subsections have not been observed as to him shall have the right of appeal to the Grievance Procedure established by Section 8 hereof, provided said appeal is filed within ten (10) days from the time said person's complaint arose.

(h)    There shall be a check-off system and an agreement established between the Employer and the Union for check-off of Union dues, initiation fees, and assessments by voluntary authorization as set forth in Exhibit A attached hereto and made a part of this Agreement.



(i)    For all new employees with no experience in the industry or as a Union member, there shall be established an orientation program conducted by the Labor Management Education Fund. Until the completion of said program by the employee or thirty (30) days from the hiring date, whichever is sooner, such new employee shall be paid ten cents (10¢) per hour less the scale of the classification in which they are employed. This section shall be effective upon approval by the trustees of the Labor-Management Education Fund.

## SECTION 3. PROBATIONARY PERIOD

The probationary period for new employees shall be sixty (60) calendar days. During such probationary period, an employee may be terminated for any reason and the employee shall have no recourse to the grievance procedure. At the first of the month following completion of the probationary period, an employee may be eligible for pension, education and health contributions based upon shifts or hours worked in the preceding month (see Section 11).

## SECTION 4. MAINTENANCE OF MEMBERSHIP

All persons employed in the Club who, at the date of this Agreement are members in good standing of the Union, and all persons employed by the Club who shall become members of the Union after the date of this Agreement, shall be required as a condition of employment to retain their Union membership in good standing during the life of this Agreement.

## SECTION 5. BUSINESS REPRESENTATIVES

The accredited representatives of the Union shall be entitled to enter the premises of the Club at any reasonable time to investigate working conditions and to see that the Agreement is being enforced, provided that such business representative shall first notify the management and further provided that there shall be no interference with the proper conduct of business.

The Club will, upon request, provide a suitable place where such business agents may interview employees. The business agent shall not have the right to enter or visit any portion of the Club premises other than the portion where the employees belonging to the Union perform their work.

## SECTION 6. DISCRIMINATION

There shall be no discrimination against any employee with respect to Union activity, race, color, creed, national origin, or sex, to the extent provided by state, federal, or local law.

## SECTION 7. LABOR RELATIONS

(a)    There shall be no strikes, lockouts, picketing, or stoppages of work during the life of this Agreement.

(b)    The observance of a bona fide picket line (sanctioned by the San Francisco Labor Council) by any individual member of the Union shall not constitute a breach of this Agreement, provided that no affirmative action is taken by the Union in violation of the Agreement.

(c)    The Union may establish a Labor Relations Committee.  The Employer agrees to meet with the Labor Relations Committee at mutually agreeable times and places for the purpose of discussing issues of concern to the Club and the employees, the nature of which issues shall be specified in writing in advance by the party requesting such a meeting.  Nothing contained herein shall constitute a waiver of the procedural requirements of Section 8 of this Agreement.

(d)    UNION RIGHTS.

1. The Club shall provide new hires with Union Membership packets, provided by the Union, which shall include information regarding dues, withdrawal cards, basic health and welfare eligibility, Union resources and the Union contract.

2. The Club agrees to distribute delinquent dues notices, upon request by the Union, to members in arrears.

3. Shop stewards shall be released from work to assist the Union in arbitration and adjustment board hearings, as needed, on unpaid time and with reasonable notice, which should be at least seven (7) days and should include only arbitrations and adjustment boards relating to the steward's own Club.

4. Shop stewards shall be granted up to six (6) days per year unpaid release time to attend steward trainings and meetings conducted by the Union. Stewards must give reasonable notice of at least fourteen (14) days prior to the training.

## SECTION 8. GRIEVANCE PROCEDURE

It is mutually agreed between the Parties that the speedy resolution of grievances is in the best interests of the employees and the Club.  Timely settlement of disputes fosters better communication, builds morale and trust, and ultimately creates a sense of teamwork in the



workplace. To that end, the Parties have created the following grievance procedure which encourages the employee to first talk to their supervisor when questions, problems, complaints or disputes arise, and encourages the resolution of grievances at the lowest possible levels and provides for a quick and fair resolution of problems and disputes.

(a)     Should disputes arise between the employee or the Union and the Club regarding the interpretation and/or application of the specific terms of this Agreement and/or disciplinary action, including discharge taken pursuant to alleged violations of house rules, work rules, procedure and/or terms and conditions of this Collective Bargaining Agreement, such disputes shall be processed in the time and manner prescribed herein. Unless otherwise defined as "calendar days", time limits in this process exclude Saturdays, Sundays and Holidays.

Time limits at any step in the procedure may be waived by the mutual written agreement of the parties.

Informal Step.   The employee may, within five (5) days of the incident or circumstances giving rise to the dispute, take the matter up with his immediate supervisor. While this step is encouraged, it is not required.

Step 1.

(a)     Within ten (10) days of a request for a meeting, the designated Union representative (Field Representative or Shop Steward) and the designated Club representative shall discuss the matter and attempt to reach a resolution. The employee is encouraged to attend this step, but is not required to do so. All grievances must be brought to the attention of the Club management within thirty (30) calendar days of the event giving rise to the dispute, after which the above mentioned meeting will be scheduled. in the case of discharge or suspension, the time limit shall be seven (7) days from the date of discharge or suspension.

(b)     Settlements reached at this level shall be considered non-presidential, unless the Club representative and the Union Field Representative agree that the settlement shall be reduced to writing and may be used as a precedent in the future.

(c)     The Club representative involved in the Step 1 meeting shall respond within three (3) days of the Step 1 meeting.

(d)     All grievances must be clearly stated at the Step 1 meeting by the grieving party to the other. The grievance must specify all facts upon which the grievance is based, including date(s), individual(s) involved, remedy sought and the section(s) of the contract allegedly



violated. Failure to comply with the requirements in this paragraph shall constitute a waiver of the right to invoke the provisions of the Grievance Procedure as to those matters.

Step 2.

(a)    If the matter is not satisfactorily resolved at Step 1, the Union may file a written request for an Adjustment Board hearing within seven (7) days of the Step 1 response. The request for the Adjustment Board must specify in writing the contract sections violated, the individuals involved, the date of the alleged violation, the nature of the grievance, including contract section violated, and the remedy sought. The Adjustment Board hearing shall not be held unless and until such a written request has been submitted.

(b)    The Adjustment Board shall be held within thirty (30) calendar days of the written request.

(c)    The Adjustment Board shall consist of two (2) Club representatives and two (2) union representatives plus a neutral mediator who shall act as Chairman and who shall mediate the dispute in an attempt to have the parties reach a settlement. The Club representative and the employee(s) involved in the incident or circumstances giving rise to the dispute should be present at the Adjustment Board.

(d)    The Adjustment Board shall be governed by the following rules:

1.    The grievant and Club representative shall have a right to be present at the Adjustment Board.

2.    Each party shall have one (1) principle spokesperson.

3.    Outside lawyers or consultants shall not participate in an Adjustment Board.

4.    Any documents presented to the mediator shall be returned to the respective parties at the conclusion of the hearing.

5.    Proceedings shall be informal in nature.  The rules of the evidence shall not apply and no formal record of the Adjustment Board shall be made.

6.    The mediator shall have the authority to meet separately with any person or persons but will not have the authority to compel a resolution of a grievance.



7.  If no settlement is reached, the mediator shall provide the parties with an immediate written advisory decision within 48 hours of the adjournment of the proceedings.

8.  The mediator shall state the grounds for his/her advisory decision.

9.  The Adjustment Board shall have no power to alter or amend the terms of the Collective Bargaining Agreement.

10. The cost of the mediator, if any, shall be split between the Club and the Union.

(e)    As an alternative, by mutual agreement in advance of the Adjustment Board hearing, the neutral fifth (5th) person may be designated a mediator/arbitrator who will attempt to mediate the dispute.  In the event a mediated settlement cannot be reached, the decision of the mediator/ arbitrator shall be binding on both parties and the employees(s) involved.

(f)    The parties may, by mutual agreement prior to the Adjustment Board hearing, agree that the case may be heard without a neutral fifth (5th) person.

(g)    Grievance Procedure for Club/Union.  The Club and/or the Union shall be free to file grievances as described in (a) hereof directly with the other party.  The initial consideration of such grievances shall commence with the Adjustment Board as provided for in Step 2.

Step 3.  Arbitration.

(a)    If no settlement is reached at Step 2, a party wishing to arbitrate the dispute shall notify the other party in writing within fifteen (15) calendar days of the Adjustment Board hearing.

(b)    In the event that a grievance which has been mediated subsequently goes to arbitration, no person serving as a mediator between these parties may serve as an arbitrator. Nothing said or done by the mediator may be referred to at arbitration.  Nothing said or done by either party for the first time in the mediation hearing may be used against them at arbitration.

(c)    If the parties choose to submit a grievance to arbitration, they shall attempt to agree upon an arbitrator.  If no agreement is reached, the arbitrator shall be selected by alternately striking names from a list of seven (7) from the California State Mediation and Conciliation Service.

(d)    The arbitrator shall not have the power to add to or modify any of the terms, conditions, sections or articles of this Agreement.  His or her decision shall not go beyond what

is necessary for the interpretation and application of this Agreement in the case of the specific grievance at issue.

(e)    Each party shall bear its own cost of arbitration, excluding the arbitrator's fee and his related costs, which shall be divided equally between the parties.

(f)    The parties may, by mutual agreement, request expedited arbitration. In an expedited arbitration proceeding, both parties shall waive their rights to submission of any briefs and stenographic recordings. The arbitration proceedings must be continuous to a conclusion. The arbitrator must render a bench decision immediately following the close of the hearing, followed by a written decision within seven (7) days of the close of the hearing.

(g)    Expedited Arbitration. At the request of either the Union or the Club, any individual suspension or discharge case shall be submitted to expedited arbitration in accordance with the following rules. The parties hereby adopt and incorporate by reference the then current Expedited Labor Arbitration Rules of the American Arbitration Association but agree that the arbitration hearing hereunder must be held within thirty (30) calendar days of the submission of the suspension or discharge grievance to expedited arbitration hereunder.

(h)    In the event that the Union develops a pattern and practice of abusing this expedited arbitration procedure or substantially lessens the legitimate compromising of grievances, as determined by an arbitrator, then this section shall not apply for the remainder of the contract at said Club.

(i)    Notwithstanding any of the foregoing, a claim of any employee for any payment of any additional compensation or sum due under the terms of this Agreement for all forms of overtime (except in the case of the spread of the workweek), uniform allowance and meals, shall not go beyond a sixty (60) day period, unless such claim is reported to the Union by the aggrieved employee and the Club is notified by the Union within ten (10) days of the pay period when such claim or sum should have been paid.

## SECTION 9. DISCIPLINE

(a)    The Club will develop a standard written warning notice form to be issued to an employee within seven (7) days, excluding Saturdays, Sundays, and holidays, after the action for which the warning is issued comes to the attention of the Employer.

(b)    The Employer may discipline, suspend, or discharge an employee only for just cause.

(c)     An employee may request the attendance of a shop steward at an investigatory interview where the employee reasonably and in good faith believes discipline may result from such investigatory interview or where disciplinary measures may be taken.

(d)     Employees shall be issued warning notices on the job during work time or during a disciplinary interview, which shall be paid time. Copies of warning, suspension, or discharge notices shall be sent to the Union within forty-eight (48) hours of issuance to an employee.

## SECTION 10. HEALTH AND WELFARE, PENSION AND EDUCATION PLAN TRUST AGREEMENTS

(a)     Health and Welfare Fund  -  There is presently in effect the San Francisco Culinary, Bartenders and Service Employees Welfare Fund established pursuant to a Trust Agreement dated April 1, 1976, as amended, between Golden Gate Restaurant Association; Hotel Employers Association of San Francisco; San Francisco Hotel Association, Inc.; San Francisco Club Institute and Hotel Employees and Restaurant Employees Union, Local 2; and Service Employees Union, Local 14; under which a group medical, surgical, hospital, life insurance, and other supplemental benefits plan or plans have been established. The said plan or plans shall continue in effect under this Agreement and are subject to the terms of said Trust Agreement as the said plans and the Agreement may be amended from time to time.

The Employer agrees to make the contributions per eligible employee to said Trust Fund as required by the provisions of this Agreement.

(b)     Pension Fund  -  There is presently in effect the San Francisco Culinary, Bartenders and Service Employees Pension Plan and Trust Agreement dated December 30, 1977, as amended, between Golden Gate Restaurant Association; Hotel Employers Association of San Francisco; San Francisco Hotel Association, Inc.; San Francisco Club Institute and Hotel Employees and Restaurant Employees Union, Local 2; and Service Employees Union, Local 14. The Employer shall contribute to the Pension Fund established under said Pension Plan and Trust Agreement, as the plan and agreement may be amended from time to time, the amounts for each eligible employee required by the provisions of this Agreement.

(c)     Education Fund  -  There is presently in effect the San Francisco Hotel-Restaurant Labor-Management Education Trust Fund established pursuant to a Trust Agreement dated, December 30, 1977, as amended, between Golden Gate Restaurant Association; Hotel Employers Association of San Francisco; San Francisco Hotel Association, Inc.; San Francisco Club Institute and Hotel Employees and Restaurant Employees Union, Local 2; and Service Employees Union, Local 14. The Employer shall contribute to the Education Fund established



under said Trust Agreement as the same may be amended from time to time the amounts for each eligible employee as required by the provisions of this Agreement.

(d)    In order to effectuate the purpose of this section, the Employer hereby further agrees to accept, be bound by, and comply with in all respects as fully as though he were a signator to that certain Trust Agreement dated April 1, 1976, as amended, by which the San Francisco Culinary, Bartenders and Service Employees Welfare Trust Agreement and the San Francisco Culinary, Bartenders and Service Employees Pension Plan and Trust Agreement dated December 30, 1977, as amended, and the San Francisco Hotel-Restaurant Labor-Management Education Trust Fund Agreement dated December 30, 1977, as amended, were established. Receipt of a copy of each of said Trust Agreements is hereby acknowledged by the Employer. The Employer further agrees to accept and be bound by any future amendments to said Trust Agreements and the plans of benefits established thereunder.

(e)    The failure of any employer to make the required contributions shall cause him to be personally liable under this agreement for the benefits due his employees specified in the plan or plans hereinabove referred to, if said employees do not receive said benefits by reason of such employer's failure to make such contributions on their behalf.

The following liquidated damages provision became effective on January 1, 1983:

1.    Employer contributions required by a collective bargaining agreement shall be payable on the tenth (10th) day of the month for the immediately preceding month, and shall be payable to the Funds in care of the custodian designated by the Trustees.

2.    Payments shall be accompanied by complete reports on forms furnished or approved by the Trustees, so that the contributions can be allocated accurately. For any report period for which an employer fails to file a report, such employer shall be considered delinquent until the proper report is filed by the employer and accepted by the Trustees; and the amount due from the employer for the report period for which the employer has failed to file shall be deemed to be not less than the amount due pursuant to the most recent complete report filed by the employer covering an equivalent period of time. The employer may be compelled by the Board or its assignee, by way of subpoena, civil discovery or other proceeding, to prepare, submit and file with the Trusts proper reports for any period for which the employer has previously failed to file.

3.    Contributions will be timely received if actually received by the designated custodian on or before the 20th of the month in which they are due; contributions will also be timely received if mailed with the correct address and postage in an envelope postmarked on or



before the 20th of said month, unless the 20th falls on a Saturday, Sunday or holiday, in which case the envelope must be postmarked no later than the next workday.

4.  It is recognized and acknowledged that the regular and prompt payment of employer contributions to each of the Funds is essential to the operation of the Trusts and the provisions of benefits under the Plans and that it would be extremely difficult, if not impossible, to fix the actual expense and damage to the Funds and to the covered employee which would result from the failure of an employer to make such monthly contributions in full within the time provided.

5.  The amount of damage resulting from each such failure to make timely contributions hereunder, as defined above, by way of liquidated damages and not as a penalty, is presumed to be ten percent (10%) of the amount due and unpaid to each Fund, which amount shall become due and payable to the Funds at the principal office of the Funds upon the day following the 20th day of the month in which said delinquency occurred. Such liquidated damages shall be added to and become part of said contributions due and unpaid and from the first day of the month following the month in which the payment became delinquent the whole thereof shall bear interest at the rate of ten percent (10%) per annum.

6.  If any employer further defaults in the payment of any amounts due the Funds following receipt of a written ten (10) day notice of claimed delinquency, then in addition to the contribution due and the liquidated damages provided for in this section, there shall be added to the obligation of said defaulting employer all costs and fees incurred by the Funds in the collection of the same, in the event any action or proceeding is commenced to enforce payment by such employer. Such costs and fees which the Trustees are entitled to recover in their own names or otherwise, shall include, without limitation, court costs, arbitration fees, costs or fees of collection agents, and auditing fees, together with all reasonable attorneys' fees and reasonable compensation for employees or agents of the Trust Fund incurred in connection therewith.

## SECTION 11. HEALTH AND WELFARE, PENSION AND EDUCATION PLAN ELIGIBILITY

All employees in the employ of the Employer who complete the qualifying periods set forth in paragraphs (a), (b), (c), (d), (e) or (f) below, for the period immediately preceding the first day of each month, shall be included as eligible employees, and the Employer shall make the contributions required for each of such employees not later than the tenth (10th) day of each succeeding month. Said employees shall become entitled to receive health and welfare benefits on the first day of the second month following the month in which the first contribution is made on their behalf. Dental coverage becomes effective the first of the month following the

fifth monthly contribution within a twelve (12) month period, and thereafter, to continue coverage, an employee must earn at least three (3) Employer contributions each year.

*Regular & Extras*

(a)    All employees who have completed the probationary period and who have worked regularly three (3) hours or more per day, five (5) days or more per week, in at least three (3) of the four (4) full payroll weeks of the Employer immediately preceding the first day of the month for which contributions are due.

*Regular & Extras*

(b)    All employees who have completed the probationary period and who are regularly scheduled for and work two (2) full shifts or more per payroll week in at least three (3) of the four (4) full payroll weeks of the Employer immediately preceding the first day of the months for which contributions are due.

(c)    After completion of the probationary period, the first thirty (30) days' absence from work due to bona fide sickness or disability, leave of absence, vacation, holidays, or temporary layoff by the Employer shall be counted as time worked, except that this provision shall not be applicable to paragraph (d) below.

(d)    All extra and banquet employees whose combined employment in the hotel, motel, club, and restaurant industries, parties to the Trust Agreement, equals the qualifying period set forth in paragraph (e) below for the period immediately preceding the first day of each month shall be considered eligible employees, and the respective employers shall make the contributions required to the Health and Welfare program for each of such employees, pro-rated in accordance with employment records, not later than the tenth (10th) day of each succeeding month, and each of such employees shall be entitled to all of the benefits provided for in said Health and Welfare program.

(e)    All steady extra banquet employees who have completed the probationary period and who have worked forty-five (45) hours in the preceding month.

(f)    All extra employees who have completed the probationary period and who have worked regularly three (3) hours or more per day, five (5) days or more per week and at least three (3) of the four (4) full payroll weeks of the Club immediately preceding the first day of the month for which contributions are due.

(g)    No employee covered under this Agreement shall have more than one (1) full contribution per month made on his or her behalf. Should an employee, including a steady extra employee, become eligible separately by virtue of work performed for two or more participating employers, the contributing Employer shall receive a credit or refund from the respective Fund of fifty percent (50%) of the Employer's contribution on behalf of the individual employee.



Further, it is understood that no individual covered by the terms of this Agreement shall receive more than the benefits provided for an individual working solely for a single employer.

(h)    A new employee of a contributing employer who in the month prior to said employee's employment with a contributing employer was employed by an employer with a collective bargaining agreement with the Union, and was entitled to health and welfare benefits at such previous place of employment pursuant to a collectively bargained plan with the Union, shall be eligible for the benefits covered under the Health and Welfare Fund (medical, hospital, life insurance, dental, and other benefits) commencing with the first day of the month following the month in which a contribution is required to be paid, and is paid, to the Fund on his or her behalf.

## SECTION 12. HEALTH AND WELFARE, PENSION AND EDUCATION FUND CONTRIBUTIONS

(a)    Effective November 1, 1999 and through October 31, 2000, the total monthly contribution for eligible employees is four hundred and twenty seven dollars and fifty-nine cents ($427.59). Effective November 1, 2000, the total monthly contribution shall be four hundred and sixty-three dollars and fifty-nine cents ($463.59).

The Club will pay the following increases for Health & Welfare, Pension, Dental, Vision, Education Fund and Supplemental Vacation: Effective November 1, 2001, the Club will contribute an additional contribution of $38.50 per month for eligible employees, $20.00 of which will go to the Pension Plan. Effective November 1, 2002, the Club will contribute up to a maximum of an additional $37.50 per month for maintenance of eligible employees' Health and Welfare, Dental and Vision insurance benefit coverage, if such is in accordance with uniformly-established contribution rates within the industry.

_____    Maintenance of Health and Welfare Benefits:  As of November 1, 2003 and November 1, 2004, until the expiration of this Agreement, and for shifts worked or compensated in the preceding months, contributions shall be increased in such amounts as necessary to "maintain health and welfare benefits." To "maintain health and welfare benefits" (or the phrase "maintenance of benefits" as also used in this Section), it is understood and agreed that contributions shall be increased for all three of these purposes:  1) paying for the then existing health and welfare, dental and medical benefits provided by the Health and Welfare Fund, 2) providing for the reasonable costs of administrating the Trust Fund and said benefit programs, and 3) establishing and/or maintaining a 6-month operating reserve, all for the remaining term of the Agreement if such is in accordance with uniformly-established contribution rates within the industry.

The same level and kind of retiree fringe benefits as were in effect on July 31, 1989 shall continue for the term of this Agreement, subject only to the discretion of the Trustees to reduce the benefits offered by the Trust Funds in extreme financial emergencies, or to increase retiree benefits if circumstances permit. Nothing in this Agreement shall be construed to require Employer contributions in excess of the amounts herein.

(b)    Pension Fund - Effective November 1, 2000, the Employer shall contribute to the San Francisco Culinary, Bartenders and Service Employees Pension Trust Fund the amount of one hundred and three dollars and thirty-three cents ($103.33) per eligible employee per month. Effective November 1, 2001, and for the remainder of this Agreement, the Employer shall contribute to the San Francisco Culinary, Bartenders and Service Employees Pension Trust Fund the amount of one hundred and twenty- three dollars and thirty-three cents ($123.33) per eligible employee per month. Both increases are part of, not in addition to, the contribution amounts listed in Section 12(a) above. During the life of this Agreement, there shall be no Employer contribution decreases. The above increases in contributions to the Pension Fund shall be utilized to provide pension benefit improvements.

With regard to any actuarial gain which may result from the Pension Fund for the year ending March 31, 1996; March 31, 1997; March 31, 1998; and March 31, 1999, one-half (1/2) of said actuarial gain shall be applied solely to reducing the unfunded vested liability as it may exist at that time. The remaining one-half (1/2) shall be utilized to provide a pension benefit improvement for all pensioners and non-pensioners for all years of credited service in an amount to be actuarially determined as of April 1, 1996; April 1, 1997; April 1, 1998; and April 1, 1999, respectively, and in a manner so as not to increase either the Employer contributions or the amortization period of the unfunded vested liabilities.

At the option of the participant, pension benefits shall be payable effective on either 1) the date on which the participant filed application for said benefits subject to the relevant provisions of the Plan; or 2) that date on which the participant could have filed such application. The date on which the participant would have been eligible to file such application is when the participant terminated covered employment. However, option No. 2 can only be extended back to the beginning of the plan year in which the participant's application is actually filed.

(c)    Education Fund - Effective August 1, 1993, the Employer shall contribute fifty cents (50¢) per month per eligible employee (which is part of, not in addition to, the contribution amount listed in 12(a) above) to the San Francisco Hotel-Restaurant Labor-Management Education Trust Fund (herein referred to as "Education Fund") established pursuant to a trust document dated July 1, 1970 and as subsequently amended.

 

Should the reserves of the Education Fund reach $100,000 the contribution will be suspended until such time as the reserves decrease to a minimum level of $50,000.

The Education Fund shall be utilized at the discretion of the Education Fund Trustees for the purpose of funding training programs of which "On-The-Job" training programs at the sites of Employers shall be a primary goal. The Trustees of the Education Fund shall act upon specific requests from Employers and the Union for grants to fund such specific OJT training programs.

A coordinator shall continue to be employed to coordinate Education Fund programs.

(d)    Miscellaneous  - The Union agrees to notify the administrator of the Trusts within ten (10) working days of the execution of any collective bargaining agreement. Delivery of an executed copy of the collective bargaining agreement to the administrator of the Trusts within ten (10) working days of the execution date of the collective bargaining agreement shall constitute notice. In the event the Trust administrator or any trustee or any other fiduciary to any trust referred to in this Agreement shall become aware of any violation of this section, he/she shall immediately bring that matter to the attention of the full Board of Trustees.

The administrator shall submit a billing to the Employer on the first (1st) day of each month during the life of this Agreement.

The Employer shall be required to post in an area frequented by employees a copy of the monthly employer remittance form the employer sends each month to the Trust Funds' administrator. Such posting shall conform to the terms of the Employer's individual collective bargaining agreement as an official Union notice. The administrator shall provide the employer with such additional copies of the form for the posting as necessary.

(e)    Medical and/or Dental Insurance Waiver. Any eligible employee who can show evidence that he/she is covered under the Health and Welfare plan of another individual may, upon approval of the Club, elect to be removed from coverage of the Health and Welfare plans provided under this Agreement and may receive one-half (1/2) of the Health and Welfare contribution that the Employer would otherwise have made on the employee's behalf pursuant to Section 12 of this Agreement up to a maximum of seventy-five dollars ($75.00) per month. Such election shall be in writing, on a form jointly agreed upon by the Employer and the Union. A copy of this form and evidence of coverage shall be sent to the Union, and shall be effective at the time the Employer would have made the next contribution on the employee's behalf pursuant to Section 12. Upon receipt of such written waiver, the Employer will no longer be obligated to make monthly contributions for Health and Welfare coverage required under Section 12 of this



Agreement on the waiving employee's behalf. The Employer shall have no responsibility to verify the evidence of alternate coverage provided or to request updates on such evidence.

An employee who has chosen to waive coverage under this Section may make written request to the Employer, with a copy to the Union, that he/she be returned to coverage under this Agreement. Upon receipt of such written request, the Employer shall commence making all contributions required by Section 12 of this Agreement following the next full month in which the employee is eligible for said contributions. Any employee who requests that they be returned to coverage under this Agreement shall be returned subject to all terms and conditions then current of the Health and Welfare plans. An employee may elect to be removed from coverage pursuant to this Section only once during the term of this Agreement.

(f)    Legal Fund: Effective October 1, 1996, and based upon September, 1996 hours, the Club shall Commence contributions of five cents ($.05) per hour worked by eligible employees to the San Francisco Culinary, Bartenders and Service Employees Legal Services Fund. The eligibility requirements for such contributions shall be as set forth in Section 11 of the Collective Bargaining Agreement.

(g)    Vision Benefits: The parties agree to establish a new active-employee only, Vision Care benefit or benefits program with VSP or an alternate provider. Specific benefits shall be determined by the Trustees of the Health and Welfare Fund in consultation with the bargaining parties. Contributions to establish this benefit (included in Section 12 (a) costs) shall be in the amount of $3.40 per month, per eligible employee based on shifts worked or compensated, and shall commence November 1, 2000.

## SECTION 13. PAST PRACTICES

Except as specifically modified by the negotiations resulting in this Agreement, the parties agree to the continuation of all practices as regards the interpretation and application of their Agreements; including, but not limited to, the hours and working conditions for all workers employed by the Club at either of its facilities. To the extent there is a conflict between such a practice and an Agreement, the practice shall prevail. By agreeing to this provision, it is the intent of the parties to maximize job security for existing regular employees by continuing practices within the Club which are designed to provide for flexibility of work assignments while maintaining, to the extent practicable, historical jurisdictional lines.

## SECTION 14. TERM AND REOPENING OF AGREEMENT

This Agreement shall become effective August 1, 2000 and shall remain in full force and effect until July 31, 2005 with a reopener for the last two (2) years for wages and one designated

issue per party (not to include Health and Welfare costs) to be effective August 1, 2003 and August 1, 2004, upon ninety (90) days written notice prior to August 1, 2003, from one party to the other. In the event the parties are unable to reach agreement on the reopener issues, the prohibitions of Section 7(a) shall be inapplicable. Thereafter, the Agreement shall be automatically renewed from year to year unless either party shall serve written notice on the other party of a desire to alter, amend, or terminate said Agreement at least ninety (90) days prior to the expiration. Either party may reopen the Agreement in the event national health care legislation is enacted.

FOR THE UNION                                FOR THE EMPLOYER

_____                      _____
Michael Casey, President                     B.J. Van Horn, Acting General Manager

Date: _____                        Date: _____

*JMcC/opeiu-3-afl-cio(51)jy*

# GENERAL RULES

## SECTION 1. WORKDAY

The workday shall consist of seven (7) hours and ten (10) minutes work, two (2) paid ten (10) minute break periods, and a paid meal of one-half (1/2) hour, for a total of eight (8) hours.

## SECTION 2. WORK WEEK

If the Club operates six or seven days per week, all steady employees shall receive two (2) consecutive days off, except where an employee requests split days off in writing or except where employees who work less than thirty (30) hours are assigned to a sixth day of work in a work week at straight-time. The straight-time work week shall be forty (40) hours. An employee shall not be regularly scheduled for a sixth day of work under this provision.

The work week for all employees covered by the Agreement shall be the calendar week commencing with Monday and ending with Sunday.

## SECTION 3. SALARIES

(a)     Wages of a regular employee shall be paid weekly or semi-monthly, whichever is the practice of the Employer.

(b)     Wages of extra employees shall be paid on completion of their work. In the event that an employee is not paid on completion of the workday, the employee shall be compensated for one (1) hour at the overtime rate specified in each craft rule.

(c)     If an employee is indefinitely laid off or services are terminated, the employee shall be paid at the conclusion of his or her last shift. If such action occurs after office hours or on the weekend, when no one is authorized to make payment, the employee's check shall be available during office hours next following the indefinite layoff or termination. If an employee is not paid as provided above, one (1) day's pay for every day the employee demands payment, up to the thirty (30) days, shall be paid in accordance with state law.

(d)     In the event the regular payday falls on a holiday, all salaries shall be paid on the preceding business day.

*SIDE LETTER or Agreement* (handwritten)



## SECTION 4. REPORTING PAY

When an employee reports to work as scheduled and is not allowed to work, the Employer shall pay the employee for his scheduled shift. This shall not apply to an employee reporting for work under the influence of liquor or drugs or in a condition which makes him unfit to perform the work requested. This section shall also be inapplicable if work cannot be supplied due to causes beyond the control of the Employer.

## SECTION 5. WORK SCHEDULE

(a)     The Employer shall post in a conspicuous place or places in each department a job record specifying names, social security numbers and classifications, days off, starting and finishing times, meal periods, and rest periods, which must be corrected weekly if need be. Upon request, the Employer will furnish the Union with a current seniority list, including social security numbers, once every twelve (12) months.

(b)     Regular employees shall have a fixed starting time, which time shall not be changed by the Employer without his giving a two (2) day notice to the employee affected.

(c)     Regular employees shall have a fixed weekly schedule of working days, which schedule shall not be changed by the Employer without a two (2) day notice to the employee affected.

## SECTION 6. SHOP STEWARDS

In the interest of carrying out this Agreement for the mutual benefit of both parties, it is agreed that shop stewards may be designated by the Union in the Club, who shall be recognized by the Employer as the representative of employees and the Union on the job. Shop stewards may discharge their responsibilities during work hours, provided such activities do not interfere with the proper performance of their duties. The Union agrees to provide the Club with an up-to-date list of the authorized shop stewards in the Club.

## SECTION 7. MEALS

(a)     Any employees working an eight (8) hour shift shall be entitled to three (3) meals of food, one of which shall be on paid time, palatable, of good quality, and constituting a reasonably balanced diet, or three dollars and seventy-five cents ($3.75) in lieu thereof in establishments where no food is served the employees by management.



(b)    Any employees working a six (6) hour shift shall be entitled to two (2) meals of food, one of which shall be on paid time, palatable, of good quality, and constituting a reasonably balanced diet, or two dollars and fifty cents ($2.50) in lieu thereof in establishments where no food is served the employees by management.

(c)    Any employee working a shorter shift shall be entitled to one (1) meal, palatable, of good quality, and constituting a reasonably balanced diet, or one dollar and twenty-five cents ($1.25) in lieu thereof in establishments where no food is served the employees by management.

(d)    Employees working a shift of six (6) hours or more in duration shall be allowed a full half (1/2) hour for their meal period, which shall not be deemed to be a break in the time worked.  In the event the Employer fails to provide time off (for any reason), said employee shall receive one half hour's pay at the rate of time and one-half (1-1/2) for the meal period worked, in addition to receiving the cash allowances specified herein.

(e)    The meal period shall be duty free.

(f)    Time off for meals shall be provided between three (3) and five (5) hours from the beginning of the shift or as provided in the craft rules.

## SECTION 8. EMPLOYEE'S EATING FACILITIES

Employees shall be provided with clean and sanitary eating facilities.

## SECTION 9. DRESSING ROOMS

(a)    Proper sanitary dressing rooms with individual lockers shall be made available to all employees.

(b)    The Employer shall be responsible for loss or damage to uniforms, linens, or tools of the trade belonging to the employee resulting from fire within the premises.  The Employer shall also be responsible for loss or damage to all wearing apparel belonging to the employee resulting from fire within the premises due to negligence on the part of the Employer.

(c)    Two (2) Union employees, one of whom shall be a shop steward, if available, covered by this collective bargaining agreement shall be present in the event the Employer finds it necessary to search lockers.



## SECTION 10. EMPLOYEES - DEFINITION OF

(a)    All employees other than "extra employees" as defined in section (b) shall be considered "regular employees" and shall accrue seniority and fringe benefits in accordance with this Agreement.

(b)    Any employee who is temporarily hired by the Club to replace absent employees or to supplement the regular staff, shall be considered an "extra employee." Notwithstanding anything in this Agreement to the contrary, "extra employees" shall not accrue seniority and shall not be eligible for vacation, sick leave or holiday benefits under this Agreement. An "extra employee" who works 20 shifts in a calendar quarter, commencing on the first of the month of such a calendar quarter, shall henceforth be considered a "regular employee" and his initial date of hire in the applicable calendar quarter shall be used for the purpose of computing benefits under this Agreement. Such 20 shifts shall exclude Club functions to which all members are invited, of which there may be a maximum of 38 per calendar year for purposes of this section. Upon an 'extra employee' qualifying to become a 'regular employee' under this section, the extra employee may voluntarily, and in writing, elect to remain as an 'extra employee' of the Club. Such an election shall remain in effect for twelve (12) months from the date thereof. The employer shall not discourage or encourage an extra employee from electing to remain an extra employee in lieu of becoming a regular employee.

(c)    1. It is understood that the term "steady extra" refers to banquet food servers and banquet bartenders exclusively. "Steady extras" shall be considered regular employees and shall receive prorated benefits under this Agreement. The Employer is not obligated to create any "steady extra" positions if the number of banquet shifts does not necessitate such positions.

2. The Club shall post a weekly schedule for all "steady extra" employees in accordance with Section 5 Work Schedule. "Steady extras" shall be free to accept outside work on those days they are not scheduled to work the Club. Should additional work become available after the posting of the schedule, the Club shall offer such work to the "steady extras" in order of seniority.

3. If additional banquet waiters are required, the Club shall offer the additional banquet work to the ala carte luncheon waiters, to the extent they are not already scheduled for ala carte work, in order of seniority, prior to the calling the Union hall for extra waiters.

4. The Union and the Club shall determine the maximum number of positions on the steady extra list in each department. In order to initially fill the vacancies on the steady extra list, the Union and the Club shall examine the employment relationship of current employees and then the parties shall agree on who shall fill the positions on the list. Thereafter, any vacancy on



a steady extra list shall be filled in accordance with this contract in the same manner as any other vacancy in the Club. For the term of this contract, an employee cannot become a steady extra without the agreement of the Union and the Club.

## SECTION 11. COMPLETION OF SHIFTS

All shifts shall be completed in the same house where the shift originates. If an employee is transferred to another house, the short-shift scale shall prevail.

## SECTION 12. REST PERIOD

(a)    An employee shall receive one (1) ten (10) minute rest period for each four (4) hours worked.

(b)    Time allowed for rest periods shall be treated as paid time.

(c)    Rest periods shall be duty free.

## SECTION 13. VACATIONS

(a)    1. After a regular or steady extra employee has been in the service of the Employer for twelve (12) months, said employee shall be entitled to one (1) week's vacation with pay.

2. After a regular or steady extra employee has been in the service of the Employer for two (2) years, said employee shall be entitled to two (2) weeks' vacation with pay annually.

3. After a regular or steady extra employee has been in the service of the Employer for eight (8) years, said employee shall be entitled to three (3) weeks' vacation with pay annually.

4. After a regular or steady extra employee has been in the service of the Employer for fifteen (15) years, said employee shall be entitled to four (4) weeks' vacation with pay annually.

(b)    In the case of regular or steady extra employees, whether full-time or short-time, pay for the vacation period shall be computed by dividing the total amount of monies earned, including scheduled overtime, by the number of weeks actually worked during the year preceding the vacation.



(c)    When employment is severed, an employee shall be entitled to vacation pay pro-rated in accordance with the schedule in subsection (a) above and based on the number of weeks actually worked, provided that the employee has been in the service of the Employer for at least six (6) months from the date of employment before said employee shall be entitled to any vacation pay.

(d)    Temporary layoffs or leaves of absence, as defined under Section 16 Seniority, during the period of employment shall not interrupt the continuity of employment for the purpose of eligibility for vacations.

(e)    One week of vacation time may, at the option of the employee, be taken in daily increments. The remainder of the vacation time shall be taken in weekly increments and, except for individual days referred to above, there is only one (1) split of the vacation period to which said employee is entitled per year.  No employee shall work for the Club during his scheduled vacation period.

(f)    Every January 1, a vacation schedule will be posted.  Employees in each department    and/or room, as the case may be, shall be given their choice of vacation periods on the basis of their Club seniority in accordance with Section 16 Seniority.  The Employer shall have the right to determine the number of employees who can take vacation within a given month.

(g)    Vacation pay shall be paid to the employee by separate check at least by the last workday, excluding Saturdays, Sundays, and holidays, prior to the commencement of his vacation.

(h)    Employees shall be entitled to one (1) additional week at their own expense consecutively with a paid vacation period.

(i)    Employees may carry over one (1) week of earned vacation to the next year.  Any carried over vacation shall be paid at the previous year's earned rate of pay.

(j)    Supplemental Vacation Benefit Plan effective January 1, 1972:  Under the San Francisco Culinary, Bartenders and Service Workers' Welfare Fund, there has been established a supplemental vacation benefit fund.  This said plan of other supplemental benefits hereinafter set forth is intended to supplement the vacation benefits provided by the collective bargaining agreement between the parties and, except as specifically provided herein, this said plan of benefits shall not affect or vary the terms of said collective bargaining agreements with respect to vacations.

1. For the purpose of this plan of supplemental vacation benefits, "Employer" shall mean an employer party to a collective bargaining agreement with the Union from whom contributions are due the fund on behalf of the employees covered by said collective bargaining agreement. "Employee" shall mean an employee of the Employer entitled to receive a vacation under said collective bargaining agreement. "Industry" shall mean all hotels, motels, restaurants, clubs, and other establishments providing food, beverages, and/or lodging to the public which are covered by collective bargaining agreements with the Union requiring the contributions to the Fund herein provided. "Union" shall mean the Hotel Employees and Restaurant Employees Union, Local 2.

2. Once an employee has established eligibility for three (3) or four (4) weeks' vacation under a collective bargaining agreement between an employer and the Union, said employee, upon changing jobs in the industry, shall be entitled to receive from the Fund, after one year of service with any new Employer, one (1) week or two (2) weeks' vacation pay.

3. Upon the establishment of eligibility for the supplemental vacation benefit from the Fund as provided in paragraph (2) hereof, said employee shall thereafter remain entitled to such vacation benefit from the Fund after each year of service with any employer in the industry.

4. Payments hereunder shall be subject to such deductions as may be required by law.

## SECTION 14. LEAVES OF ABSENCE

Leaves of absence without pay up to six (6) months shall be granted by the Employer for reasons of bona fide illness, maternity leave, death in the immediate family, or other reasons mutually agreed to by the Employer and the employee, which leaves of absence shall not affect the employee's rights under this Agreement. "Immediate family" is defined as mother, father, brother, sister, spouse, or child. Upon granting the leave of absence, the Employer and the employee shall notify the Union in writing of said leave of absence. An extension not to exceed six (6) months may be granted at the discretion of the Employer.

## SECTION 15. HOLIDAYS

(a)     The following shall be observed as holidays with pay under this Agreement:

Labor Day

Thanksgiving Day

Christmas Day

New Year's Day

Presidents' Day



Memorial Day
Independence Day
Two (2) Floating Holidays

For purposes of interpretation, the floating holidays shall be accrued as follows:

1.  After six (6) months of service, employees shall be entitled to one (1) floating holiday with pay.

2.  After one (1) year of service, employees shall be entitled to two (2) floating holidays with pay per year.

3.  The employee must give thirty (30) days' notice to the Employer of the date on which the employee requests the floating holidays, and such holiday selection is subject to mutual agreement between the employee and the Employer. The Employer shall not unreasonably withhold such agreement.

4.  In the event two employees choose the same floating holiday, the senior employee shall have preference.

(b)  1.  When a holiday falls on an employee's regularly scheduled workday and the employee is not required to work, the employee shall receive a regular day's pay.

2.  When a holiday falls on an employee's regularly scheduled day off and the employee is not required to work, the employee shall receive another day off with pay to be taken within two (2) weeks, or a day's pay in lieu thereof.

3.  When an employee is required to work on a holiday, the employee shall receive two and one-half (2-1/2) times the appropriate rate of pay comprised of straight-time pay for the holiday to which the employee is entitled and time and one-half for the hours worked on a holiday.

(c)  If a holiday falls during an employee's vacation period, said employee shall receive one (1) additional day of vacation with pay or one (1) day's pay in lieu thereof.

(d)  In order to be eligible for holiday pay for all purposes under this Section, the employee must work his/her full shifts on his/her scheduled work days immediately preceding and following the Holiday.

## SECTION 16. SENIORITY

(a)    Seniority shall be defined as the length of the most recent continuous period of service with the Employer. Seniority shall accrue for regular and steady extras within a given classification of work. Seniority shall be expressed in terms of years, months, and days. If two or more employees are employed within the same classification on the same day, their seniority shall be determined by the employment records.

(b)    An individual employee as defined in Section (a) hereof shall continue to accumulate seniority during:

1.  Time spent in the Armed Services of the United States, time spent in alternative service as defined by the Selective Service Act, or time spent in the Red Cross or other combat relief service.

2.  Periods of absence of not more than six (6) consecutive months due to a bona fide illness, maternity leave, or injury provided that the employee has been in the service of the Employer for one (1) year and that the individual has notified his or her immediate supervisor of the illness or injury within twenty-four (24) hours of the occurrence of said illness or as soon as possible if the employee is physically incapacitated so that he or she cannot provide such notice within twenty-four (24) hours. In the event that the employee does not have one (1) year of service with the Employer at the time the leave commences, the employee shall retain seniority but shall not accumulate seniority during the period of leave.

3.  Any period in which an employee has been terminated and the employee's termination has been rescinded, reversed, or the employee is subsequently reinstated unless modified pursuant to the terms of the grievance procedure. This section shall not apply in the event that a terminated employee is subsequently reemployed as a new hire.

4.  Layoffs of less than thirty (30) consecutive calendar days.

5.  Leaves of absence of not more than six (6) months for other reasons authorized by the Employer in writing.

(c)    An individual employee as defined in subsection (a) hereof, shall continue to retain seniority during time spent in an elected or appointed Union office, provided that such employee returns within ninety (90) calendar days of the termination of his term in office.

(d)    When it is necessary to lay off employees, those employees as defined in subsection (a) hereof with the least seniority in the job classification affected shall be laid off first.  An employee who has been laid off shall have the right to bump a less senior employee in another job classification, provided the senior employee has previously worked for the Club in the other job classification and is still qualified.  When the work force is increased within the classification, employees on layoff shall be recalled in order of their job classification seniority.  Recalled employees must return within thirty (30) days from notice of recall.

(e)    Employees within a classification with the greatest Club seniority shall have preference of scheduled shifts, which shall include days off, and shall have the preference of available vacation periods.

## SECTION 17. VACANCIES, PROMOTION AND TRANSFER

An employee who believes he or she is qualified to fill another job when it becomes vacant and would be a lateral transfer or promotion may submit a written application for such work on a form to be provided by the Club for that purpose.  The Employer shall post a permanent vacancy for five (5) working days.

In the event that an employee applicant is selected for transfer or promotion and does not perform satisfactorily during the probationary period of sixty (60) working days, the employee may bump back into his or her previous job or comparable job without loss of seniority for wage and benefit purposes.  It is understood that an employee who is bumped under these circumstances and who has completed the probationary period can exercise seniority only to the extent provided by the Agreement.

## SECTION 18. EMPLOYMENT CONDITIONS

An employee shall not be required or permitted to subscribe to any form of insurance prescribed by the Employer or to make any deductions from wages without the written authorization of such employee, except such as may be required by law.  When an employee is required as a condition of employment to be bonded, the Employer shall pay the cost of said bond.  Employment applications shall be jointly approved by the Employer and the Union.

Employees shall not be required to sign employment applications which are inconsistent with the provisions of this Agreement.

Any person hired through an employment agency to fill a vacancy in the Club, in violation of Section 2(a) Hiring, of the Basic Agreement shall be reimbursed by the Employer in full all monies paid to said employment agency, other than governmental agencies.



## SECTION 19. MINIMUM RATE OF PAY

(a)    The wage rates as hereinafter set forth are minimum rates and do not prohibit a superior worker from receiving a higher rate.

(b)    No employee shall suffer a reduction in his or her regular wages except as follows: The Club may remove a premium paid to an individual where it is determined that the employee's job performance no longer merits such premium, however, it is understood that an employee must be given adequate counseling before such action is taken in order to give the employee an opportunity to retain the premium. Any dispute arising over the removal of premium pay shall be subject to the grievance procedure.

(c)    Premium paid employees shall receive as a wage adjustment that amount by which contract rates of pay are increased.

(d)    Except as otherwise specifically provided, all wage rates established are for the straight shift.

## SECTION 20. EQUAL PAY FOR MEN AND WOMEN

The wage scales shall apply equally to male and female employees.

## SECTION 21. INDIVIDUAL CONTRACTS

No member of the Union shall be compelled or allowed to enter into any individual contract or agreement with the Employer concerning the conditions of employment varying the conditions of employment contained herein.

## SECTION 22. COMBINATION JOBS

(a)    An employee may be assigned a position which combines not more than two (2) classifications of work. Said employee shall be paid at the rate of the higher classification, provided he or she works in that classification for one (1) hour. The Club may not, by virtue of this rule, evade the hiring of an employee in a higher classification where such employee in a higher classification would normally be hired, according to the usages of the trade.

(b)    The minimum rate of pay for any classification of work not covered by these rules or wage schedules shall be mutually agreed upon.

## SECTION 23. CONSTRUCTION

In the cases where these General Rules are qualified by the provisions of the rules and wage schedules of a particular craft, as provided hereinafter, and where there is any inconsistency between these rules and the rules and wage schedules of a particular craft, as provided hereinafter, the rules and wage schedules of the particular craft shall prevail.

## SECTION 24. SICK LEAVE

(a)    Employees shall earn five (5) days paid sick leave per year.  Any unused sick leave shall be accumulated up to a maximum of ten (10) additional days.

(b)    Earned sick leave may be used by an employee for the illness of his/her immediate family who reside in the same household. For this purpose, "immediate family" is defined as parent, child, spouse or "domestic partner," as defined in the Health and Welfare Trust document.

(c)    Any unused sick leave earned under this Section in excess of five (5) days may be cashed out at fifty percent (50%) of its value on the employee's anniversary date.

(d)    In cases where an employee's history or the circumstance surrounding an unscheduled absence create reasonable doubt as to the validity of the absence, the Club may require the employee to provide a doctor's note for that absence or, in the alternative, may instead require a doctor's note for all future sick days for a reasonable period of time not to exceed six (6) months.  Doctor's notes may also be required in circumstances such as when using sick days to supplement State Disability Insurance, Workers' Compensation cases and other legal or administrative circumstances.

(e)    Sick leave pay shall be integrated with unemployment compensation, disability benefits and workers compensation so that the sum of the disability sick leave pay allowable hereunder and the said disability benefits which can be paid to an employee during a week in which the employee is absent from work for reasons of illness or disability shall not exceed one hundred percent (100%) of the employee's regular weekly take-home pay for said week.

(f)    Paid time off (P.T.O.) - Employees who were hired by the Club prior to August 1, 1982 shall be entitled to the following:

1.   An additional five (5) days P.T.O. which may be used at the employee's discretion for any reasons.




2. At their option, such employees may also use up to five (5) days of earned vacation as P.T.O.

3. The employee shall notify management one (1) week in advance of any request for P.T.O., except in the instance of illness or unforeseen circumstances.

4. The employee may carry over a maximum of three (3) days P.T.O. into the following year so that the maximum P.T.O. of any such employee in a year is eight (8) days, excluding the one week vacation which may be used as P.T.O.

## SECTION 25. FUNERAL LEAVE

(a)    In the event of a death in the immediate family of an employee, the employee shall, upon request, be granted such time off with pay and without loss of benefits as is necessary to make arrangements for the funeral and attend same, not to exceed three (3) regular scheduled working days. This provision does not apply if the death occurs during the employee's paid vacation or if the employee is on leave of absence, layoff, or sick leave.

(b)    For the purpose of this provision, the immediate family shall be restricted to mother, father, sister, brother, spouse, or child. At the request of the Employer, the employee shall furnish a death certificate or other documentation and proof of relationship.

(c)    Funeral leave applies only in instances in which the employee attends the funeral, or is required to make funeral arrangements, but is not applicable for other purposes, such as settling the estate of the deceased.

## SECTION 26. JURY DUTY

An employee who is called as a juror shall be paid by the Employer any difference between the total amount paid, including expenses for such service by the government, and the employee's lost wages up to a maximum of ten (10) working days' straight-time wages per contract year as set forth in the attached wage scales. It is understood that such employee shall be released from work to attend to juror responsibilities.

To be compensated for jury duty as defined above, the employee shall endorse the amount paid by the government to the Employer as a condition of receiving the Employer's payment for wages lost.